**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Orlando, Florida**

JOHN DOE, M.D.,

                Plaintiff,                         **No.:**

vs.

ALEX M. AZAR II, as Secretary, U.S.
Department of Health and Human
Services, and his Successors,

                Defendant.

_____/

                                **Complaint to Challenge Agency Policy, for Review of Final Agency Actions, Violations of the Privacy Act of 1974, Damages, Declaratory Judgment, and Injunctive Relief, Temporary and Permanent**

**COMPLAINT TO CHALLENGE AGENCY POLICY, FOR REVIEW OF FINAL
AGENCY ACTIONS, VIOLATIONS OF THE PRIVACY ACT OF 1974, DAMAGES,
DECLARATORY JUDGMENT, AND TEMPORARY AND PERMANENT
INJUNCTIONS**

      **COMES NOW** Plaintiff John Doe, M.D. ("Dr. Doe"), and files this Complaint, to sue

Defendant Alex M. Azar II, as Secretary of the United States Department of Health and Human

Services ("DHHS"), stating as follows:

**SUMMARY OF THE ACTION**

      1.     This is a case involving a false report submitted to the National Practitioner Data

Bank ("NPDB") on Dr. Doe.  Exhibit "1."  Palmetto General Hospital reported Dr. Doe to the

NPDB without cause and without affording him the right to a hearing and other rights required

by law.  The report was without cause because Dr. Doe was not under a formal investigation when

his clinical privileges at Palmetto General Hospital expired.  Additionally, Palmetto General Hospital did not provide Dr. Doe with the opportunity for a hearing as mandated by the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 et seq. ("HCQIA").

2.     Dr. Doe, appealed the adverse NPDB report to DHHS. His appeal was denied on July 31, 2018.  Exhibit "2."  Dr. Doe later challenged the incorrectly submitted report by filing a Privacy Act request with DHHS.  However, it was denied on March 28, 2019.  Exhibit "3."  The present suit challenges the final agency actions and pleads for damages and other relief.

## GENERAL ALLEGATIONS

### A. The Parties

3.     Plaintiff John Doe, M.D., is a medical doctor licensed in the state of Florida.  He resides in Melbourne, Brevard County, Florida.  Dr. Doe was the subject of an adverse report filed with the NPDB by Mark Racicot, the Chief Operating Officer for Palmetto General Hospital.

4.     Defendant Alex M. Azar II is the Secretary of the United States Department of Health and Human Services, duly appointed, qualified, and acting as the administrative head of such agency.  As such, he is responsible for its acts including the Dispute Resolution Decision issued by DHHS on July 31, 2018, Exhibit "2," and the Privacy Act Dispute Resolution Decision issued by DHHS on March 28, 2019, Exhibit "3."

5.     The United States Department of Health and Human Services ("DHHS") is the federal agency designated under the Health Care Quality Improvement Act of 1986, as amended, 42 U.S.C. § 11101 et seq. ("HCQIA") to handle and oversee the receipt and filing of reports from health care entities, such as Palmetto General Hospital, which reports include Adverse Action

Reports and Correction Reports.

6.     The National Practitioner Data Bank ("NPDB") is an entity of and run by DHHS. The NPDB keeps and maintains Adverse Action Reports and Correction Reports on health care practitioners in accordance with 42 U.S.C. § 11101 et seq. ("HCQIA"), and 45 C.F.R. Part 60. The NPDB furnishes those reports to health care facilities where the physician in question has worked or is seeking employment.

## B.  Jurisdiction and Venue

7.     This action arises under 5 U.S.C. §§ 703 & 704 (Review of Agency Action), 5 U.S.C. § 552a (Privacy Act of 1974), 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1346(b)(1), and 28 U.S.C. § 1361, under which this Court has jurisdiction.  Any damages alleged exceed $75,000, exclusive of attorney's fees, costs, and interest.

8.     Venue is proper in accordance with 5 U.S.C. § 552a(g)(5), 5 U.S.C. § 703, and 28 U.S.C. § 1391(e). Additionally, a substantial part of the events giving rise to the underlying claim occurred within the Middle District of Florida, the harm to the Plaintiff occurred in the Middle District of Florida, and Plaintiff is a resident of the Middle District of Florida.

## C.  Standing

9.     Plaintiff has suffered a substantial loss of income and employment opportunities. He has suffered lost professional fees and has lost patients because of the continuing actions of the Defendant.  Additionally, Plaintiff is the subject of a derogatory, adverse NPDB report, available to others, which damages his personal and professional reputations.

10.     If the actions of the Defendant are allowed to continue, then Plaintiff will further suffer a loss of employment opportunities, patients, and income, further harm to his personal and professional reputations, and will have his ability to provide medical services in hospitals restrained or prevented.

11.     All conditions precedent to bringing this action have been completed, satisfied or waived, including exhausting all administrative remedies and all appeals required by statute.

## D.  National Practitioner Data Bank (NPDB)

12.     The National Practitioner Data Bank was created by the Health Care Quality Improvement Act.

13.     According to Defendant:

> The NPDB is a confidential information clearing-house created by Congress with the primary goals of improving health care quality, protecting the public, and reducing health care fraud and abuse in the United States. Acting primarily as a national flagging system, the NPDB provides information that permits queriers to perform comprehensive reviews of the credentials of health care practitioners, entities, providers, and suppliers.   The NPDB collects information on medical malpractice payments and certain adverse actions and discloses that information to eligible entities. . . .

> The NPDB is meant to be used as one of many tools available to health care entities of all types as they make licensing, certification, hiring, credentialing, contracting, and similar decisions. The NPDB can provide valuable background information, but health care entities should use the NPDB in conjunction with other resources when making personnel and contracting decisions.

(U.S. DHHS, Health Resources and Services Administration, NPDB Guidebook (Rockville, Md., April 2015) p. E-1.)  Exhibit "4."

14.     The Defendant has established certain policy decisions and guidelines interpreting the HCQIA, without undertaking formal rulemaking procedures required by the Administrative Procedure Act, 5 U.S.C. § 553.  One of these is the NPDB Guidebook published by or under the authority of the Defendant.

15.     According to Defendant:

> The NPDB Guidebook serves as a policy manual. It is one of a number of efforts to inform the U.S. health care community and others about the National Practitioner Data Bank (NPDB) and the requirements established by the laws governing the NPDB, primarily:
>
> -- Title IV of the Health Care Quality Improvement Act of 1986 (HCQIA), Public Law 99-660 (referred to as "Title IV"); . . .

(U.S. DHHS, Health Resources and Services Administration, NPDB Guidebook (Rockville, Mary., April 2015) p. A-1.)  Exhibit "4."

16.     The version of the NPDB Guidebook quoted above is the version that was in effect at all times relevant to this matter.


### E.  History and Background of the Action

17.     On April 17, 2014, Dr. Doe was diagnosed with sleep apnea syndrome with associated hypoxemia.

18.     Sleep apnea is a potentially serious sleep disorder in which breathing repeatedly stops and starts while the person is asleep.

19.     Hypoxemia is a condition where the person has an abnormally low concentration of oxygen in their blood and can be associated with sleep apnea.

20.     The combination of sleep apnea and hypoxemia can result in a loss of energy and extreme fatigue during waking hours.

21.     The most common way of treating sleep apnea is with a continuous positive airway pressure ("CPAP") machine, which provides continuous airflow to the person while they are sleeping.

22.     From September 2014 to July 13, 2016, Dr. Doe was fully credentialed at and provided physician services at Palmetto General Hospital, located in Hialeah, Florida.

23.     From April 17 to October 6, 2014, Dr. Doe experienced difficulty with maintaining current and contemporaneous medical records due the loss of energy he suffered from his sleep apnea.

24.     On October 6, 2014, Palmetto General Hospital's Medical Care Peer Review Committee met with Dr. Doe to discuss the timeliness of his medical records.

25.     On October 20, 2014, the Medical Care Peer Review Committee wrote a letter to and informed Dr. Doe that it was assigning him a B2 rating, which stands for "Behavior with Opportunity for Improvement," that it was requesting he complete ten (10) days of Cerner[1]

---

[1]     Cerner Corporation is an American supplier of health information technology solutions.  It provides the electronic health record (EHR) system that Palmetto General Hospital uses in its hospital.

training starting on October 20, 2014, and that the Medical Care Peer Review Committee would be monitoring and reviewing Dr. Doe's daily patient progress notes.

26. Dr. Doe complied with all of the Medical Care Peer Review Committee's requirements and recommendations.

27. On September 16, 2015, the Medical Care Peer Review Committee again met with Dr. Doe to discuss tardy medical records.

28. On September 23, 2015, the Medical Care Peer Review Committee informed Dr. Doe that it decided to place him on 100% review for timeliness of documentation until further notice.

29. Other than the review of his records, Dr. Doe was never informed of any investigation, Professional Peer Review, or any disciplinary action against him by Palmetto General Hospital or its Medical Care Peer Review Committee.

30. On October 13, 2015, Dr. Doe requested medical leave for six (6) months from Palmetto General Hospital in order to obtain treatment for and recover from his sleep apnea.

31. During Dr. Doe's medical leave, he realized that his CPAP machine had been leaking fluid and was not operating properly while he slept, thereby resulting in his prolonged fatigue even after using the CPAP machine. Dr. Doe obtained a new CPAP machine to remedy this issue.

32. On March 20, 2016, Dr. Doe informed Palmetto General Hospital's Medical Staff Office that he would be returning to work at Palmetto General Hospital at a minimal level of activity as he took the time to establish his own private practice in the area.

33.     On April 1, 2016, the Director of the Medical Staff at Palmetto General Hospital, informed Dr. Doe that all staff members who were on leave must apply to the Credentials/Ethics Committee of Palmetto General Hospital for reinstatement.

34.     On June 15, 2016, the Credentialing Coordinator for the Physician Support Services/Medical Staff Office for Palmetto General Hospital, wrote a letter to Dr. Doe regarding an "Invitation to Credentials/Ethics Committee."

35.     In the letter, she informed Dr. Doe that the Credentials Committee members requested to meet with Dr. Doe and that he was scheduled to appear in front of and meet with the Credentials/Ethics Committee to discuss his reinstatement from his leave of absence at Palmetto General Hospital on July 21, 2016.

36.     Ms. Cruz's letter made no mention of any investigation of Dr. Doe's conduct or any contemplated adverse clinical privileges action.

37.     On July 13, 2016, Dr. Doe resigned from Palmetto General Hospital because he obtained employment with Family Physicians of Winter Park, P.A., located in Winter Park, Florida.  Dr. Doe chose to move from the Melbourne area to the Winter Park area solely because his economic situation in Hialeah, Florida, was not sustainable for him.

38.     Dr. Doe did not move to the Winter Park area in order to avoid any adverse disciplinary action against him.

39.     Dr. Doe was not aware of nor made aware that Palmetto General Hospital was considering any adverse disciplinary action against him or of any investigation of him.  Dr. Doe was not informed of any hearing rights or hearing.

40.     Palmetto General Hospital accepted Dr. Doe's resignation.

41.     On August 8, 2016, less than one (1) month later, Palmetto General Hospital, filed an adverse report with the NPDB against Dr. Doe.  Palmetto General Hospital filed the adverse report as a:

> VOLUNTARY SURRENDER OF CLINICAL PRIVILEGE(S), WHILE UNDER, OR TO AVOID, INVESTIGATION RELATING TO PROFESSIONAL COMPETENCE OR CONDUCT.

Exhibit "1."

42.     Palmetto General Hospital's adverse report provides a description of the events that led to the filing of the adverse NPDB report against Dr. Doe.  The description does not mention any investigation or Focused Professional Peer Evaluation of Dr. Doe.  Exhibit "1."

43.     The adverse NPDB report was incorrect because Dr. Doe had not been under any investigation at the time he resigned, was not aware of any investigation or any other type of ongoing action against him, and did not voluntarily surrender his clinical privileges while he was under such investigation.

44.     Furthermore, Dr. Doe was never advised of:

        a.      Any notice of any pending investigation or action against him;

        b.      Any specific charge or complaint against him;  or

        c.      Any right to request a hearing.

## F.  Statutory Requirements for Report to NPDB

45.     Pursuant to the law, a hospital is required to file a report with the NPDB when it:

> (2) accepts the surrender of clinical privileges of a physician (i) while the physician is <u>under an investigation</u> by the entity relating to possible incompetence or improper professional conduct, or (ii) in return for not conducting such an investigation or proceeding.

42 U.S.C. § 11133(a)(l)(B) (emphasis added).

46.     Although the law is clear that a hospital must file an NPDB report when a physician voluntarily surrenders the physician's clinical privileges while under "investigation" or to avoid an "investigation," this requirement did not apply in Dr. Doe's case.

47.     Since Dr. Doe commenced action to challenge the adverse NPDB report, Palmetto General Hospital has attempted to redefine Dr. Doe's routine medical quality assurance review by its Medical Care Peer Review Committee as an "investigation."

44.     Dr. Doe did not "voluntarily surrender" his clinical privileges while under investigation because he was never under "investigation" by Palmetto General Hospital's Medical Care Peer Review Committee.

45.     According to the NPDB Guidebook, guidance published by the Defendant:

> A <u>routine</u>, formal peer review process under which a health care entity evaluates, against clearly defined measures, the privilege-specific competence of <u>all</u> practitioners is <u>not</u> considered an investigation for the purposes of reporting to the NPDB.  However, if a formal, targeted process is used when issues related to a <u>specific practitioner's</u> professional competence or conduct are identified, this is considered an investigation for the purposes of reporting to the NPDB.  (Emphasis in original.)

Exhibit "4."

46.     In Dr. Doe's case, the original medical quality assurance process that resulted in the Medical Care Peer Review Committee's recommendation for him to complete his medical records was not an investigation.

47.     As part of its routine formal peer review process, Palmetto General Hospital evaluated, against clearly defined measures, Dr. Doe's privilege-specific competence.  According to the NPDB Guidebook, this type of routine peer review does not constitute "investigation" for purposes of NPDB reporting.

48.     This is contrasted with a "formal, targeted process" used when "issues related to a specific practitioner's professional competence or conduct is identified."  That process is considered an "investigation for the purposes of reporting to the NPDB."  Dr. Doe was never under this type of formal targeted process.

49.     Even when a committee process is triggered, like the Medical Care Peer Review Committee, the reviews and analyses in any meetings or interactions with the physician which occur thereafter are still part of the peer review process.  They are not considered to be an investigation for NPDB purposes.

50.     The goal of the Medical Care Peer Review Committee in Dr. Doe's case was to provide collegial intervention and design a remedial action plan which provides education and support to Dr. Doe while not in any way limiting the exercise of his clinical privileges.  This type of evaluating, monitoring, and proctoring are not reportable to the NPDB.

51.     Therefore, super-imposing an NPDB report on Dr. Doe as a result of a routine peer review process is inconsistent with NPDB reporting guidelines and is incorrect.

52.     Dr. Doe was undergoing a routine peer review evaluation by Palmetto General

Hospital which resulted in a discussion for remedial action, not a formal investigation.

53.     Additionally, pursuant to 42 U.S.C. § 11112:

> (a)  In General
>
> For purposes of the protection set forth in section 11111(a) of this title, a professional review action <u>must</u> be taken--
>
> > \*          \*          \*
>
> > (3)  <u>after adequate notice and hearing procedures are afforded to the physician involved</u> or after such other procedures as are fair to the physician under the circumstances
>
> > \*          \*          \*
>
> (b)  Adequate Notice and hearing
>
> A health care entity is deemed to have met the adequate notice and hearing requirement of subsection (a)(3) of this section with respect to a physician if the following conditions are met (or are waived voluntarily by the physician):
>
> > (1) Notice of proposed action
> >
> > The physician has been given notice stating--
> >
> > > (A)(i)  that a professional review action has been proposed to be taken against the physician,
> > >
> > > (ii) reasons for the proposed action.
> > >
> > > (B)(i) that the physician has the right to request a hearing

Page 12 of  33

> on the proposed action,
>
> (ii) any time limit (of not less than 30 days) within which to request such a hearing, and
>
> (C) a summary of the rights in the hearing under paragraph (3).
>
> (2) Notice of hearing
>
> If a hearing is requested on a timely basis under paragraph (1)(B), the physician involved must be given notice stating--
>
> > (A) the place, time, and date, of the hearing, which shall not be less than 30 days after the date of the notice, and
> >
> > (B) a list of the witnesses (if any) expected to testify at the hearing on behalf of the professional review body.
>
> (3) Conduct of hearing and notice
>
> If a hearing is requested on a timely basis under paragraph (1)(B)--
>
> > *       *       *
> >
> > (B) the right to the hearing may be forfeited if the physician fails, without good cause, to appear;

42 U.S.C. § 11112 (emphasis added).

54.    Dr. Doe was never afforded notice, hearing procedures, or a hearing to defend himself before the adverse NPDB report was filed by Palmetto General Hospital.

### G.  Dr. Doe's Appeal of the NPDB Report

55.     Dr. Doe timely appealed the adverse NPDB report following the dispute procedures provided by the NPDB.

56.     Dr. Doe received a decision dated July 31, 2018, from Defendant DHHS, denying his appeal (review).  Exhibit "2."

57.     Exhibit "2" constitutes final agency action subject to review by this Court pursuant to 5 U.S.C. §§ 703 and 704.

### H.  Dr. Doe's Request for Correction of NPDB Report Pursuant to  Privacy Act of 1974, 5 U.S.C. § 552a

58.     On November 20, 2018, Dr. Doe requested that DHHS correct its records pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a, by removing Palmetto General Hospital's adverse NPDB report.

59.     According to the Privacy Act of 1974, 5 U.S.C. § 552a(d)(2)A, DHHS had ten (10) days to respond to the November 20, 2018, request or it would be deemed denied.

60.     On December 19, 2018, DHHS sent a letter to Dr. Doe's attorneys, informing them that DHHS had received the original Privacy Act correction request and was investigating the matter.

61.     On February 15, 2019, Dr. Doe requested review and appealed DHHS's failure to act on his Privacy Act correction requests to the Assistant Secretary for Health, Admiral Brett P. Giroir, M.D., for the final stage required of a Privacy Act appeal.

62.     On March 28, 2019, the Deputy Director of the Division of Practitioner Data Bank, Melissa Moore, wrote to Dr. Doe's attorneys to inform them that his Privacy Act correction requests were denied.  Exhibit "3."

63.     Exhibit "3" constitutes final agency action subject to review by this Court pursuant to 5 U.S.C. §§ 703 and 704 and 5 U.S.C. § 552a, the Privacy Act of 1974.

64.     After exhausting all of the mandatory procedures pursuant to the Privacy Act, Dr. Doe now seeks review by this Court of the Agency's actions, which he contends are incorrect.


## CAUSES OF ACTION

### COUNT I

### CHALLENGE OF FEDERAL AGENCY POLICY DECISION THAT EXCEEDS STATUTORY AUTHORITY

65.     This is a cause of action by Plaintiff against Defendant challenging a formal policy decision of the Defendant that exceeds the Defendant's statutory authority, pursuant to 5 U.S.C. §§ 703 and 704.

66.     This Count is pleaded alternatively to and in addition to each other Count in this Complaint.

67.     For the purpose of this Count, Paragraphs 1 through 64 above are incorporated herein by reference.

68.     **In summary, for this Count:**

a.     The Health Care Quality Improvement Act, 42 U.S.C. § 11101, et seq., (HCQIA) provides certain due process rights for health care providers that must be met by a

reporting entity (in this case a hospital, Palmetto General Hospital), before a valid report to the NPDB is authorized.

b.     The Defendant has issued written policies and guidelines that meet the definition of "rule" as defined in 5 U.S.C. 551(4), which states:

> "Rule" means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the  . . . practice requirements of an agency and includes . . . practices bearing on any of the foregoing. . . .

c.     The Defendant has issued written policies and guidelines meeting the definition of "rule" that have derogated from, negated and are contrary to the HCQIA and are in violation of the Administrative Procedure Act, 5 U.S.C. § 553.

d.     The Defendant has not initiated or conducted any rule making process in doing so.  The policy guidance provided by Defendant to the general public is being followed by hospitals and other individuals and entities as though they were the law.

e     The Plaintiff is challenging the policy of the Defendant as one that is contrary to and exceeds the authority provided by statute and is, therefore, invalid, unauthorized and ultra vires.

f.     The Plaintiff is challenging the policy of the Defendant as one that is contrary to and exceeds the authority provided by statute.

g.     The Plaintiff is challenging the policy of the Defendant as one that is capricious and arbitrary and is, therefore, invalid.

69.     The policy of the Defendant contained in the NPDB Guidebook is provided generally to the public for its use and specifically to reporting entities for use in making decisions of what is reportable to the NPDB.

70.     The policy being challenged herein is the Defendant's policy stated in Exhibit "4," on its website, and, elsewhere, which stated at all times relevant hereto, and continues to state:

> **Nonrenewals**
>
> Nonrenewals of medical staff appointment or clinical privileges generally should not be reported to the NPDB.  However, if the practitioner does not apply for renewal of medical staff appointment or clinical privileges while under investigation by the health care entity for possible professional incompetence or improper professional conduct, or in return for not conducting such an investigation or not taking a professional review action, the event is considered a surrender while under investigation and must be reported to the NPDB.  <u>These actions must be reported regardless of whether the practitioner was aware of the investigation at the time he or she failed to renew the staff appointment or clinical privileges. A practitioner's awareness that an investigation is being conducted is not a requirement for filing a report with the NPDB.</u>

(U.S. DHHS, Health Resources and Services Administration, NPDB Guidebook (Rockville, Mary, April 2015), p. E-33.)  Exhibit "4."

71.     The foregoing policy in particular is contrary to the express wording of the HCQIA and due process of law and negates its requirements to afford the physician notice and a hearing. This policy is not a valid interpretation of the statute and is contrary to the express wording of the statute.

72.     The HCQIA specifically requires that a reporting entity must provide or attempt to provide a physician notice of his hearing rights, its procedures, and the right to a hearing.

73.     The HCQIA allows a physician to waive these rights;  however, as in the case of any waiver of any significant right, the law requires that such a waiver be knowing and intentional by the individual waiving the right.

74.     In the present case, the DHHS policy, as implemented by Palmetto General Hospital, allows for an unknowing, unintentional waiver of a significant statutory right by the physician.

75.     In the present case, the DHHS policy actually encourages reporting entities to hide the fact that an investigation is pending from a physician who is the subject of such an investigation, as Palmetto General Hospital apparently did in the present case.

76.     5 U. S. C. § 706 provides, in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall—
>
> (1)  compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2)   hold unlawful and set aside agency action, findings, and conclusions found to be—
>
>       (A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
>       (B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of the procedures required by law 5 U.S.C. § 553;

\*       \*       \*

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record. . . .

77.     Dr. Doe contends that the facts of this case show that Defendant's policy:

a.      Is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law;

b.      Contrary to constitutional right, power, privilege, or immunity of Dr. Doe and other in his situation;

c.      In excess of and contrary to statutory authority;

d.      Without observance of the procedures required by law, specifically 5 U.S.C. § 553;

e.      Unwarranted by the facts of this case to the extent that the facts, facts which are subject to trial de novo by the reviewing court.

Based on the policy of the Defendant, Dr. Doe has been significantly harmed, deprived of his rights, and he continues to be significantly harmed.

**WHEREFORE,** Dr. Doe asks the Court to rule and declare the policy of the Defendant to exceed its statutory authority, to be capricious and arbitrary, to be contrary to the HCQIA, and

to be invalid.

## COUNT II

## VIOLATION OF DUE PROCESS

78.     This is a cause of action by Plaintiff against Defendant for damages within the jurisdiction of this Court for the violation of due process of law as required by the Healthcare Quality Improvement Act of 1986 ("HCQIA"), specifically 42 U.S.C. § 11112.

79.     This Count is pleaded in the alternative and in addition to the other causes of action stated herein.

80.     Dr. Doe incorporates for this Count the allegations contained in Paragraphs 1 through 64 and 69 through 77, above, as if set forth fully herein.

81.     Palmetto General Hospital violated Dr. Doe's due process rights, including those set forth in 42 U.S.C. § 11112, by not providing or attempting to provide him with any notice that he was the subject of a formal investigation, prior to his resignation.  The Defendant was and is aware of this fact.

82.     Palmetto General Hospital violated Dr. Doe's due process rights, including those set forth in 42 U.S.C. § 11112, by not giving him any notice of any specific charges against him. The Defendant was and is aware of this fact.

83.     Palmetto General Hospital violated Dr. Doe's due process rights, including those set forth in 42 U.S.C. § 11112, by not providing or attempting to provide him with any notice of a fair hearing, notice of fair hearing procedures, or an actual fair hearing before reporting him to the NPDB.  The Defendant was and is aware of this fact.

84.     The actions of Palmetto General Hospital violated Dr. Doe's due process rights, including his rights pursuant to 42 U.S.C. § 11112.  The Defendant has aided and abetted the actions of Palmetto General Hospital and wrongfully upheld them by failing to remove the adverse report or otherwise correct it.

85.     42 U.S.C. § 11112 states:

> (a)  In General
>
> For purposes of the protection set forth in section 11111(a) of this title, a professional review action must be taken -
>
> *        *        *
>
> (3)     <u>after adequate notice and hearing procedures are afforded to the physician involved</u> or after such other procedures as are fair to the physician under the circumstances

42 U.S.C. § 11112.  (Emphasis added).

86.     The Defendant accepted, published, distributed, and continues to distribute the adverse report made by Palmetto General Hospital on Dr. Doe despite the fact that Dr. Doe was never provided with his statutory rights to adequate notice, hearing procedures, or a hearing.

87.     Additionally, after being informed that Dr. Doe was never provided with these hearing rights, the Defendant entered a final agency action refusing to remove or correct the adverse report.

88.     Dr. Doe has been damaged as a direct result of the actions of the Defendant, including loss of income and employment opportunities.  He has suffered lost professional fees and has lost patients because of the continuing actions of the Defendant.  Additionally, Plaintiff

is the subject of a derogatory, adverse NPDB report, available to others, which damages his personal and professional reputations.

## COUNT III

### REVIEW OF FINAL AGENCY ACTION PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT

89.     This is a cause of action by Plaintiff against Defendant within the jurisdiction of this Court pursuant to 5 U.S.C. §§ 703 and 704, for review of final agency actions, Exhibits "2" and "3." It requests review by this Court of the actions by the Secretary of Health and Human Services, denying requests to remove an adverse report from the National Practitioner Data Bank.

90.     This Count is pleaded alternatively to and in addition to each other Count in this Complaint.

91.     For the purpose of this Count, Paragraphs 1 through 64 and 69 through 77, above are incorporated herein by reference.

92.     The actions of the Defendant are incorrect and are contrary to law.

93.     The actions of the Defendant are capricious and arbitrary.

94.     Plaintiff has been and continues to be damaged by the actions of the Defendant.

95.     Plaintiff has a significant and substantial interest in having such action prohibited and the adverse report removed.

96.     Dr. Doe is not satisfied with the final agency decisions and believes they are wrong.

97.     Plaintiff Dr. Doe requests this Court review the actions taken by the Defendant and reverse them, ordering the offensive report removed, voided, or corrected.

## COUNT IV

## VIOLATION OF THE PRIVACY ACT OF 1974

98.     This is a cause of action by Plaintiff against Defendant within the jurisdiction of this Court for damages and other relief for violation of the Privacy Act of 1974, specifically, 5 U.S.C. §§ 552a(g)(1)(A) and 552a(g)(1)(C).  It requests review by this Court of the actions by the Secretary of Health and Human Services, denying a request to remove an adverse report from the National Practitioner Data Bank.  Exhibit "3."

99.     This Count is pleaded in the alternative and in addition to the other causes of action stated herein.

100.    Dr. Doe incorporates for this Count, Paragraphs 1 through 64 and 69 through 77, above are incorporated herein by reference.

101.    DHHS maintains records related to Dr. Doe within a federal system of records subject to the Privacy Act called the National Practitioner Data Bank.

102.    Such records are routinely released by the Defendant to state licensing boards, insurance companies, and potential employers, including hospitals and other health care entities.

103.    The actions of the Defendant in accepting the adverse report against Dr. Doe were incorrect and contrary to law.

104.    The report on Dr. Doe is factually incorrect.

105.    The procedures required by the Health Care Quality Improvement Act before such an adverse report could be submitted were not followed.

106.    Pursuant to the regulations governing the NPDB the report should not have been submitted to the NPDB.

107.    Pursuant to the Privacy Act of 1974, the Defendant should have granted Dr. Doe's request for removal or correction of the adverse report.

108.    The Privacy Act of 1974, at 5 USC 552a(d), states in relevant part:

> (d)  ACCESS TO RECORDS.—Each agency that maintains a system of records shall—
>
> *          *          *
>
> (5)  maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination;
>
> (6)  prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes. . . . (Emphasis added.)

109.    Thus, there is an affirmative duty on the part of the Defendant to ensure that all records it maintains are accurate and complete.

110.    Defendant violated these duties by failing to assure and maintain records that were accurate and complete.

111.    5 USC 552a(d) also provides:

> (d)  ACCESS TO RECORDS.—Each agency that maintains a system of records shall—
>
> *          *          *

Page 24 of 33

(2)  permit the individual to request amendment of a record pertaining to him and—

(A)  not later than 10 days (excluding Saturdays, Sundays, and legal public holidays) after the date of receipt of such request, acknowledge in writing such receipt; and

(B)  promptly, either—
(i)  make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or. . . .

\*        \*        \*

(3)  permit the individual who disagrees with the refusal of the agency to amend his record to request a review of such refusal. . . .

(Emphasis added.)

112.    Defendant violated these duties by failing to correct the inaccurate and incomplete record it maintained.

113.    Dr. Doe has the right to have any record that is not factually correct removed from the NPDB or otherwise corrected pursuant to the Privacy Act.

114.    Dr. Doe has the right to have any record that is not properly submitted to or included in his NPDB file removed from the NPDB or otherwise corrected pursuant to the Privacy Act.

115.    The actions of the Defendant are capricious and arbitrary.

116.    Plaintiff has been and continues to be damaged by the actions of the Defendant.

117.    Plaintiff has a significant and substantial interest in having such action prohibited and the adverse report removed.

118.    Plaintiff Dr. Doe requests this Court review the actions taken by the Defendant and reverse them, ordering the offensive report removed.

119.    In addition to monetary damages, under 5 U.S.C. § 552a(g)(1), the Court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct.

**Entitlement to Minimum Damages, Attorney's Fees and Costs,**

**Pursuant to the Privacy Act**

120.    Dr. Doe has been required to hire an attorney to represent him in this matter.

121.    Dr. Doe has retained the undersigned attorney and law firm to represent him.

122.    Dr. Doe has incurred attorney's fees and costs associated with this matter as a result.

123.    Pursuant to 5 U.S.C. § 552a(g)(2)(B), this Court may assess against the United States reasonable attorney's fees and other litigation costs reasonably incurred by Dr. Doe.

124.    Pursuant to 5 U.S.C. § 552a(g)(4)(A), Dr. Doe is entitled to actual damages or, alternatively, to the statutory minimum damages of $1,000.00 per publication or disclosure, plus attorney's fees and costs associated with this matter.

**COUNT V**

**REQUEST FOR DECLARATORY JUDGMENT**

125.    This is a cause of action for a declaratory judgment by Plaintiff against the Defendant pursuant to 5 U.S.C. § 552a(g) (Privacy Act of 1974), 5 U.S.C. §§ 704 and 706

Page 26 of  33

(Review of Agency Actions), 28 U.S.C. § 1331, and 28 U.S.C. § 2201.   This Court has jurisdiction of this pursuant to 5 U.S.C. § 552a(g), 5 U.S.C § 703, and 28 U.S.C. § 1331.

126.   This Count is pleaded alternatively to and in addition to each other Count in this Complaint.

127.   For the purpose of this Count, Paragraphs 1 through 64, 69 through 77, 81 through 88, 92 through 97, and 101 through 119, above, are incorporated herein by reference.

128.   Palmetto General Hospital reported Dr. Doe to the NPDB without providing or attempting to provide him the notice and rights required by law before it reported him to the NPDB.

129.   Prior to the adverse action being reported, Dr. Doe was not aware nor was made aware that Palmetto General Hospital was considering any adverse disciplinary action against him or of any investigation of him.

130.   Additionally, the Defendant did not remove Dr. Doe's adverse report after being informed that Dr. Doe did not receive notice of a hearing nor was he provided with a hearing.

131.   Dr. Doe believes that Palmetto General Hospital's actions, as Dr. Doe presented them to the Defendant, show that Palmetto General Hospital violated 42 U.S.C. 42 U.S.C. § 11112.

132.   Dr. Doe believes that the actions that had been taken by Palmetto General Hospital prior to August 2015 did not constitute a formal investigation as defined in the National Practitioner Data Bank Guidebook such as would give him notice that he was under investigation at any time relevant to this matter.

133.    Dr. Doe believes that allowing his clinical privileges to expire at the time when they ordinarily would have expired does not constitute a "resignation" under any applicable federal law or regulation.

134.    Dr. Doe specifically requests a declaration as to whether the plain words of the law, the HCQIA, apply or whether the policy of the Defendant as stated above and in Exhibit "4," and implemented by Defendant in the present case, should apply.

135.    Dr. Doe specifically requests a declaration as to whether the policy of the Defendant as stated above and in Exhibit "4," and implemented by Defendant in the present case, should be given effect or is contrary to statute.

136.    Dr. Doe specifically alleges:

    a.    There exists a bona fide, actual, present practical need for the declaration;

    b.    The declaration deals with a present, ascertained or ascertainable state of facts, or present controversy as to a state of facts;

    c.    An immunity, power, privilege, or right of the Plaintiff is dependent upon the facts or the law applicable to the facts;

    d.    There Dr. Doe has and other persons have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law;

    e.    The antagonistic and adverse interests are all before the Court by proper process or representation; and

    f.    The relief sought is not merely the giving of legal advice by the Court or the answer to questions propounded from curiosity.

**WHEREFORE,** Dr. Doe requests the Court enter a declaratory judgment advising on

    a.    the interpretation of the relevant provisions of the HCQIA, 42 U.S.C. § 11101, specifically § 11112;

    b.    the interpretation and applicability of the relevant provisions of the NPDB Guidebook;

    c.    whether the policy of the Defendant as stated above and in Exhibit "4," and implemented by Defendant in the present case, should be given effect or is contrary to statute;  and

    d.    Whether the Defendant has correctly applied the above to the facts of this case;

and declaring the policy as stated by the Defendant as set forth above and in Exhibit "4" to be invalid.

## COUNT VI

## REQUEST FOR INJUNCTIVE RELIEF

137.    This is a cause of action by Plaintiff against Defendant for injunctive relief, both temporary and permanent, and mandamus relief, within the jurisdiction of this Court, pursuant to Rule 65, Federal Rules of Civil Procedure and 5 U.S.C. § 552a(g)(1) (Privacy Act of 1974), 5 U.S.C. §§ 704 and 706 (Review of Agency Actions), and 28 U.S.C. §§ 1331 and 1361.  The United States District Court has original jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1361, 5 U.S.C. § 552a, and 5 U.S.C. § 703.  Any injunction issued would also lie under the Court's mandamus authority 28 U.S.C. § 1361.

138.    This Count is pleaded alternatively to and in addition to each other Count in this Complaint.

139.    For the purpose of this Count, it is alleged that there are no monetary damages or other legal remedies that are available or appropriate to afford the Plaintiff complete relief.

140.    For the purpose of this Count, Paragraphs 1 through 64, 69 through 77, 81 through 88, 92 through 97, and 101 through 119, above, are incorporated herein by reference.

141.    Unless Defendant is enjoined by this Court, Dr. Doe has and will continue to suffer great and irreparable harm to his reputation, property, business, trade, profession, and occupation, as well as harm to his present and future business and professional relationships with hospitals, clinics, Preferred Provider Organizations (PPOs) and Health Maintenance Organizations (HMOs), credentialing entities, and other such individuals and entities.

142.    Dr. Doe has exhausted all administrative remedies available to him, and no further right of agency review or appeal is available to him before DHHS or the NPDB.

143.    Dr. Doe cannot be fully compensated in damages, he is without an adequate remedy at law because the exact amount of damages Dr. Doe will suffer will be difficult to determine, and relief is immediately necessary.

144.    Injunctive relief is authorized to enjoin the actions set forth in Counts I though IV above.

145.    Pursuant to 5 U.S.C. § 552a(g)(1) and  5 U.S.C. § 706, the Court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct.

146.   Dr. Doe specifically pleads:

a.   The foregoing shows Dr. Doe will continue to suffer irreparable harm if such an injunction is not entered;

b.   There is an unavailability of any adequate remedy at law;

c.   Dr. Doe has a substantial likelihood of success on the merits;

d.   That the threatened injury to Dr. Doe outweighs any threatened harm that the injunction would cause to the Defendant; and

e.   An injunction, if issued, will not disserve the public interest.

**WHEREFORE,** Plaintiff requests the Court enter temporary and permanent injunctions requiring Defendant to remove the adverse NPDB report on Dr. Doe (along with any other corrective actions the NPDB would ordinarily take when such a report is removed or corrected) and prohibiting Defendant from any further dissemination of the adverse report.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment in his favor and against Defendant awarding:

A.   His actual pecuniary damages, including damages pursuant to 5 U.S.C. § 552a(g)(2)(B) and those pursuant to 5 U.S.C. § 552a(g)(4)(A), both past and future;

B.   Statutory damages under 5 U.S.C. § 552a(g)(4)(A), in an amount not less than $1,000.00 for each disclosure;

C.   Special damages as pleaded above;

D.      Dr. Doe's reasonable attorney's fees and costs of this action as provided by 5 U.S.C. § 552a(g)(2)(B) and 5 U.S.C. § 552a(g)(4)(A);

E.      Pre-judgment interest on all liquidated amounts;

F.      A declaratory judgment as requested in Count V;

G.      Entry of temporary and permanent injunctions, as requested in Count VI, or similar mandamus relief pursuant to 28 U.S.C. § 1361, requiring Defendant to remove the adverse NPDB report on Dr. Doe (along with any other corrective actions the NPDB would ordinarily take when such a report is removed or corrected) and prohibiting Defendant from any further dissemination of the adverse report;  and

H.      Any other relief in law or equity as this Court deems just and proper.


Done on this <u>29th</u> day of October 2019.


/s/ George F. Indest III

_____
**GEORGE F. INDEST III, J.D., M.P.A., LL.M.**
Florida Bar No.:  382426
Primary e-mail:  GIndest@TheHealthLawFirm.com
Secondary e-mail:  CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**CAROLE C. SCHRIEFER, R.N., J.D.**
Florida Bar No.:  835293
Primary e-mail:  CSchriefer@TheHealthLawFirm.com
Secondary e-mail:  CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**LANCE O. LEIDER, J.D., LL.M.**
Florida Bar No.:  96408
Primary e-mail:  LLeider@TheHealthLawFirm.com

Secondary e-mail:  CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**ACHAL A. AGGARWAL, J.D., M.B.A.**
Florida Bar No.:  1008038
Primary e-mail:  AAggarwal@TheHealthLawFirm.com
Secondary e-mail:  CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL
ATTORNEY TO BE NOTICED
**THE HEALTH LAW FIRM**
1101 Douglas Avenue
Altamonte Springs, Florida 32714
Telephone:  (407) 331-6620
Telefax:  (407) 331-3030
**ATTORNEYS FOR PLAINTIFFS**

ATTACHMENT:  Index and Exhibits

(Note:  Exhibits "1," "2," and "3," are filed under seal pursuant to the confidentiality requirements of 5 U.S.C. § 552a and 45 C.F.R. § 60.20.)