UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN DOE, M.D.,

      Plaintiff,

v.                                   Case No. 6:19-cv-02074-Orl-40LRH

ALEX M. AZAR II, as Secretary, U.S.
Department of Health and Human
Services, and his successors,

      Defendant.

_____/

### DEFENDANT'S MOTION TO DISMISS COUNTS I, II, IV, V and VI

Defendant, the Secretary of the United States Department of Health and Human Services ("HHS"), by and through undersigned counsel, moves to dismiss Counts I, II, IV, V and VI in Plaintiff's complaint. At the heart of Plaintiff's complaint is the refusal of HHS to remove an adverse report about Plaintiff (the "Adverse Report") submitted to the National Practitioner Data Bank ("NPDB") by his former employers Palmetto General Hospital ("PGH"). PGH submitted the Adverse Report because Plaintiff surrendered his credentials at PGH while he was under investigation regarding continuing insufficiencies in his recordkeeping. *See* 42 U.S.C. § 11133(a)(1).

As permitted by the Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. §§ 11101-11152, Plaintiff submitted a request that HHS review the Adverse Report to determine whether it should be removed from the NPDB. *See* 42 U.S.C. § 11136; 45 C.F.R. § 60.21. Pursuant to the regulations governing such reports, HHS conducts only a limited review, reviewing only the accuracy of the reported information

and whether it was reportable in the first instance.  42 C.F.R. § 60.21(c).  However, HHS does "not consider the merits or appropriateness of the action or the due process that the subject received" as part of this review.  *Id.*  Here HHS conducted this review, determined that there was no basis to remove the report, and denied Plaintiff's request.  *See* Exhibit 2 to Complaint.  Despite the fact that in 2012 adverse reports to the NPDB were explicitly excluded from the portion of the Privacy Act that allows a party to request amendment of a record concerning them (5 U.S.C. § 552a(d)(2)), Plaintiff nevertheless made a request under the Privacy Act for essentially the same relief he sought under 42 C.F.R. § 60.21.  Although there is no avenue for such relief under the Privacy Act, instead of denying the Privacy Act request on that basis, HHS considered the request as one for reconsideration of its Dispute Resolution Decision under 45 C.F.R. § 60.21(c), and denied the request for reconsideration on its merits.  *See* Exhibit 3 to Complaint.

Plaintiff has now filed a complaint in this Court asserting six different counts against HHS, including a due process claim (Count II); a claim that portions of a guidance publication by HHS exceed its statutory authority (Count I); a claim seeking judicial review of final agency action by HHS under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (Count III); a claim for violation of the Privacy Act (Count IV); a standalone claim for declaratory relief (Count V); and a standalone claim seeking injunctive and/or mandamus relief (Count VI).

While Plaintiff has stated a claim for judicial review under the APA of HHS's Dispute Resolution Decision under 45 C.F.R. § 60.12 in Count III, which will be addressed in subsequent briefing to this Court based on the administrative record, the

2

remainder of his claims are subject to dismissal for either lack of jurisdiction or failure to state a claim.

## MEMORANDUM OF LAW

### I.   Introduction

#### A.   Legal background to the National Practitioner Data Bank.

Congress enacted the HCQIA to improve the quality of medical care in the United States by "restrict[ing] the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance." 42 U.S.C. § 11101(2). Another goal of the legislation is to improve the quality of medical care by "provid[ing] incentive and protection for physicians engaging in effective professional peer review." 42 U.S.C. § 11101(5). To accomplish these goals, the Secretary established the NPDB to provide for the collection and dissemination of information that relates to the professional competence and conduct of physicians. 42 U.S.C. § 11134; 45 C.F.R. § 60.1. The HCQIA imposes reporting requirements on medical malpractice payers, state licensing boards, hospitals and other health care entities. 42 U.S.C. §§ 11131-34; *see also* 45 C.F.R. §§ 60.7-60.8, 60.12.

A health care entity will be required to file a report with the NPDB if it:

(A) takes a professional review action that adversely affects the clinical privileges of a physician for a period longer than 30 days; or

(B) accepts the surrender of clinical privileges of a physician –

(i) while the physician is under an investigation by the entity relating to possible incompetence or improper professional conduct, or

(ii) in return for not conducting such an investigation or proceeding . . . .

3

42 U.S.C. § 11133(a); *see also* 45 C.F.R. § 60.12(a)(1). The HCQIA defines a "professional review action" as:

> an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes a formal decision of a professional review body not to take an action or make a recommendation described in the previous sentence and also includes professional review activities relating to a professional review action.

42 U.S.C. § 11151(9); *see also* 42 U.S.C. § 11151(10) and (11) (defining "professional review activity" and "professional review body").

Neither the HCQIA nor the implementing regulations define "investigation." HHS's National Practitioner Data Bank Guidebook (the "Guidebook")[1] provides, however, that the term "investigation" is extremely broad as it relates to NPDB reporting. U.S. Department of Health and Human Services, Health Resources and Services Administration, NPDB Guidebook, 2015, at E-34. An investigation runs "from the start of an inquiry until a final decision on a clinical privileges action is reached." *Id.* at E-34.

Hospitals must query the NPDB whenever a physician applies for clinical privileges or for admission to the medical staff and at least once every two years for each physician who is on staff or has privileges at the hospital. 42 U.S.C. § 11135(a); 45 C.F.R.

---

[1] To inform the health care community of the requirements of HCQIA regarding the NPDB, the 2015 version of the Guidebook (applicable in this case) is published at https://www.npdb.hrsa.gov/resources/2015NPDBGuidebook.pdf (last visited January 3, 2020). It was amended in October 2018. *See* https://www.npdb.hrsa.gov/resources/aboutGuidebooks.jsp (last visited January 3, 2020).

4

§ 60.17(a).  A hospital that fails to query as required will be presumed to have knowledge of any information reported to the NPDB pertaining to the physician. 42 U.S.C. § 11135(b); 45 C.F.R. § 60.17(b). Information reported to the NPDB is considered confidential and may be disclosed only as provided by the HCQIA and the implementing regulations. 42 U.S.C. § 11137(b)(1); 45 C.F.R. § 60.20(a).

The NPDB is primarily an alert or flagging system.  Guidebook, at A-7.  The purpose of the NPDB is not to replace traditional forms of peer review.  Rather, NPDB information is intended to direct discrete inquiry into and scrutiny of specific areas of a physician's professional activities. Information obtained from the NPDB "serve[s] as only an indicator of professional quality and not as conclusive or complete evidence of it." 53 Fed. Reg. 9264, 9265 (Mar. 21, 1988) (preamble to proposed rule).  A NPDB adverse report does not constitute a "blacklist" preventing health care practitioners from employment:

> The Data Bank contains not only the hospital's side of the story but also the physician's response.  What the requesting hospital does with the information it obtains from the Data Bank is entirely up to that hospital.  It could completely discount the information, or it could back off from any professional relationship with the physician, or it could make further inquiries to determine what had actually happened.

*Leal v. Sec'y, U.S. Dep't of Health & Human Servs.*, 620 F.3d 1280, 1284 (11th Cir. 2010); *see also Doe v. Rogers*, 139 F. Supp. 3d 120, 128 (D.D.C. 2015) (quoting *Leal*).

Pursuant to 42 U.S.C. § 11136, HHS has established procedures allowing a physician who is the subject of a NPDB report to dispute the accuracy of the report. 45 C.F.R. § 60.21. Under these procedures, HHS will, upon request of the subject physician,

review the written information provided by both parties—i.e., the physician and the reporting entity. 45 C.F.R. § 60.21(c)(2). If HHS determines that the report is accurate, HHS will include in the report a brief statement that describes the basis for the decision. *Id.* HHS will review an adverse report only for accuracy of factual information and to ensure that the information was required to be reported. *Leal*, 620 F.3d at 1284 (citing 42 U.S.C. § 11133(a)(3)(B); and Guidebook, at F-1 through F-5). The Secretary will not review the merits of a hospital's professional review action. *Id.*

The HCQIA encourages professional review activity by providing civil damage immunity to any person who participates in a "professional review action . . . of a professional review body." 42 U.S.C. § 11111(a). For this immunity to be available, however, the professional review action must meet certain standards. Among other requirements, the action "must be taken . . . after a reasonable effort to obtain the facts of the matter," and "after adequate notice and [fair] hearing procedures are afforded to the physician involved . . . ." 42 U.S.C. § 11112(a).

**B.    The NPDB adverse report at issue in this litigation.[2]**

Plaintiff was credentialed at PGH in Hialeah, Florida from September 2014 until he surrendered his privileges on July 13, 2016. Doc. 1 at ¶¶ 22, 37. On October 6, 2014, PGH's Medical Care Peer Review Committee met with Plaintiff to discuss issues with timeliness of Plaintiff's medical records. *Id.* at ¶ 24. The Peer Review Committee

---

[2] Because this is a motion to dismiss under Rule 12(b)(6) and a facial attack on jurisdiction, the contents of this section are taken from the well-pled allegations of the Complaint and the attached exhibits.

subsequently informed Plaintiff that he needed to complete ten hours of training regarding the Hospital's electronic medical record system, and that the Peer Review Committee would continue to monitor and review Plaintiffs completion of medical records.  *Id.* at ¶ 25.  Plaintiff completed the ten hours of training; however, on September 16, 2015, the Peer Review Committee again met with Plaintiff to discuss continued tardiness in completion of medical records and then informed him that it decided to place Plaintiff on 100% review for timeliness of documentation until further notice, *id.* at ¶¶ 26-28.  A month later Plaintiff requested a six-month medical leave from the hospital.  *Id.* at ¶ 30.  On March 20, 2016, Plaintiff informed PGH that he planned to return to work.  *Id.* at ¶ 32.  In response PGH informed Plaintiff that he was required to apply to the Credentials/Ethics Committee for reinstatement following his leave of absence.  *Id.* at ¶ 33.  PGH sent a letter on June 15, 2016 to Plaintiff informing him that he was scheduled to meet with the Credentials/Ethics Committee on July 21, 2016 to discuss his reinstatement from his leave of absence.  *Id.* at ¶ 35.  However, instead of attending that meeting, Plaintiff submitted his resignation on July 13, 2016, which was accepted by PGH.  *Id.* at ¶¶ 37, 40.

On August 8, 2016, PGH filed the Adverse Report with the NPDB under the category of voluntary surrender of clinical privileges while under, or to avoid, investigation relating to professional competence or conduct.  *Id.* at ¶ 41; Exhibit 1 to Complaint.

Plaintiff appealed the Adverse Report to HHS using the dispute procedures provided by 45 C.F.R. § 60.21.  Doc. 1 at ¶ 55.  On July 31, 2018, HHS issued a Dispute

7

Resolution Decision denying Plaintiff's request to void or correct the Adverse Report, outlining the basis for that denial.  Doc. 1 at ¶ 56; Exhibit 2 to Complaint.  Plaintiff then submitted a request that HHS amend its records pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a, by removing the Adverse Report from the NPDB.  Doc. 1 at ¶ 58.  On March 18, 2019, HHS informed Plaintiff that his request under the Privacy Act was being treated as a request for reconsideration of the Dispute Resolution Decision, and denied the request.  Doc. 1; Exhibit 3 to Complaint.

## II.    Standard of Review

On a Rule 12(b)(1) motion to dismiss, subject matter jurisdiction can be challenged facially or factually.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  In a facial challenge, the court must accept a plaintiff's allegations as true and determine whether he has alleged a sufficient basis for subject matter jurisdiction.  *Id.* at 1529.  In a factual challenge, the court must determine if it has the power to hear the case and can look beyond the pleadings.  *Id.*  Here the Secretary brings a facial attack on this Court's jurisdiction to hear Plaintiff's due process claim premised on the HCQIA (Count II).   It is Plaintiff's burden to establish subject matter exists, *see McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 932 (11th Cir. 1987), in this instance by demonstrating that the HCQIA provides a private right of action to Plaintiff.  As explained below, Plaintiff has failed to do so.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  As the Court noted in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Here, other than Count III, which seeks judicial review of HHS's dispute resolution decision under the APA, Plaintiff has failed to allege claims for relief that are plausible on their face.

## III. Argument

### A. This Court lacks jurisdiction over Plaintiff's due process claim or in the alternative Plaintiff has failed to state a claim for violation of his due process rights.[3]

Plaintiff purports to bring a claim for violation of his due process rights against HHS pursuant to the HCQIA for the actions allegedly taken by PGH in its investigation of Plaintiff in connection with the Adverse Report filed with the NPDB.  Specifically Plaintiff asserts that the HCQIA gives him the right to a hearing in connection with PGH's investigation and submission of the Adverse Report to the NPDB, and that PGH's alleged failure to provide such a hearing gives him a claim against HHS for violation of his due process rights.  This claim is deficient for numerous reasons.

---

[3] Plaintiff's allegations are not clear as to whether they assert merely a procedural due process challenge to the Adverse Report under the HCQIA, or rather a substantive due process claim based on interference with a profession.  Nevertheless, either claim fails for the reasons stated herein.

9

First, a plaintiff cannot establish federal question jurisdiction through a statute that does not provide a private cause of action. *Thompson-El v. Bank of Am., N.A.*, No. 1:12-CV-840-TWT, 2012 WL 6526503, at *2 (N.D. Ga. Dec. 12, 2012) (citing *Jairath v. Dyer*, 154 F.3d 1280, 1283–84 (11th Cir. 1998); *Zoher v. NHC Healthcare Sys., Inc.*, No. 2:11-CV-00086-FTM-29, 2011 WL 5525338, at *2 (M.D. Fla. Nov. 14, 2011)). The HCQIA does not provide for a private right of action to challenge the procedures used by a peer review panel. *Bok v. Mut. Assur., Inc.*, 119 F.3d 927, 929 (11th Cir. 1997); *Patel v. Georgia Dep't of Behavioral Health & Developmental Disabilities*, 517 F. App'x 750, 754 (11th Cir. 2013); *Zoher*, 2011 WL 5525338, at *2; *Doe v. U.S. Dep't of Health & Human Servs.*, 871 F. Supp. 808, 811 (E.D. Pa. 1994), *aff'd*, 66 F.3d 310 (3d Cir. 1995). Because Plaintiff asserts that it was PGH's failure to provide him a hearing in connection with its review of his credentials, a right he contends (erroneously) is provided for by the HCQIA, his due process claim must be dismissed for lack of jurisdiction.

Second, even if there was a private cause of action under the HCQIA, it does not actually require a hearing. Rather, the cited provision of the HCQIA is an immunity statute, providing immunity from lability to private hospitals and doctors in the event the hospital or doctor follows all of the procedures set forth in 42 U.S.C. § 11112. *Bryan v. James E. Holmes Reg'l Med. Ctr.*, 33 F.3d 1318, 1321-22 (11th Cir. 1994); *Zoher*, 2011 WL 5525338, at *2; *Pierson v. Orlando Health*, No. 6:08-CV-466-ORL, 2010 WL 4341354, at *16 (M.D. Fla. Oct. 27, 2010). In other words, the provision cited by Plaintiff is not an affirmative basis for suit, but rather would be relevant in a suit by Plaintiff against PGH

for damages premised on its report to the NPDB.  Accordingly, 42 U.S.C. § 11112 does not provide a basis for a due process violation claim against the government.

Even if there was jurisdiction generally to consider a due process claim premised on an alleged violation of the HCQIA, Plaintiff here is bringing a due process violation claim against the government for actions by PGH, a private entity.  This Court and others have rejected constitutional due process claims premised on a private hospital reporting information to the NPDB following peer review procedures allegedly deficient under the HCQIA, finding that the actions are not those of a state actor.  *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1292 (M.D. Fla. 2009).  *See also Doe v. Rogers*, 139 F. Supp. 3d 120, 164-165 (D.D.C. 2015) (noting that the plaintiff's "inability to obtain hospital privileges is the result of private, third-party hospitals' responses to the Adverse Action Report" not governmental action).  While *Pierson* concerned an attempt to classify the private hospital as a state actor, the present claim is simply the other side of the same coin – trying to attribute acts of a private hospital or healthcare entity (whether it be the filing of the Adverse Report, or any subsequent alleged failure to hire or offer credentials to Plaintiff) to a government entity.  "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant."  *Doe*, 139 F. Supp. 3d at 165 (quoting *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)).  In sum, there is insufficient governmental action to support a due process claim based on HHS's conduct in maintaining the NPDB.

11

Finally, even if Plaintiff could overcome each of the previous three hurdles, where a substantive due process claim is premised on interference with ability to work, Plaintiff would have to show "'a *complete prohibition* of the right to engage in a calling, and not [a] sort of brief interruption.'" *Ming Wei Liu v. Bd. of Trustees of Univ. of Alabama*, 330 F. App'x 775, 780 (11th Cir. 2009) (quoting *Conn v. Gabbert*, 526 U.S. 286, 292 (1999)) (emphasis in *Ming Wei Liu*); *Rochling v. Dep't of Veterans Affairs*, 725 F.3d 927, 932 (8th Cir. 2013).   In *Ming Wei Liu* the Eleventh Circuit affirmed judgment against the physician on a substantive due process claim where the physician failed to show the challenged conduct "entirely foreclosed his freedom to pursue employment in his chosen field as either a cardiologist or a professor of medicine." *Id.* at 781.   *See also Doe*, 139 F. Supp. 3d at 160-62 (rejecting a claim that alleged "stigma" resulting from an adverse report to the NPDB of resignation while under investigation provided a basis for a due process claim); *Doe*, 871 F. Supp. at 813 (holding alleged reputational damage was insufficient to state a protected liberty interest).   Here, Plaintiff has not alleged as much.  Rather, he alleged that he went to work at a private medical practice based in Winter Park, Florida (Doc. 1 at ¶ 37), and alleged that he lost some undefined amount of professional fees and patients (*id.* at ¶ 88).   These allegations come nowhere near the level of deprivation of freedom to pursue employment required to make out a substantive due process claim for interference with employment opportunities.  Accordingly, to the extent this Court has jurisdiction,

Plaintiff has failed to state a claim for a substantive due process claim for interference with employment.[4]

For each of these reasons this Court should dismiss Plaintiff's due process claim (Count II).

**B.    Plaintiff has failed to state a claim for actions exceeding HHS's statutory authority (Count I).**

Plaintiff challenges the portion of the 2015 NPDB Guidebook regarding non-renewals at E-33 as contrary to the express wording of the HCQIA in that it purportedly deprives the physician of the alleged right to notice and a hearing contained in the HCQIA:

> Nonrenewals of medical staff appointment or clinical privileges generally should not be reported to the NPDB.  However, if the practitioner does not apply for renewal of medical staff appointment or clinical privileges while under investigation by the health care entity for possible professional incompetence or improper professional conduct, or in return for not conducting such an investigation or not taking a professional review action, the event is considered a surrender while under investigation and must be reported to the NPDB. *These actions must be reported regardless of whether the practitioner was aware of the investigation at the time he or she failed to renew the staff appointment or clinical privileges.  A practitioner's awareness that an investigation is being conducted is not a requirement for filing a report with the NPDB.*

Guidebook at E-33 (emphasis added).[5]

---

[4] Because Plaintiff is suing the Secretary of HHS in his official capacity, any claim for damages arising from a substantive due process claim is barred by sovereign immunity. *United States v. 1461 W. 42nd St., Hialeah, Fla.*, 251 F.3d 1329, 1338 (11th Cir. 2001); *Taylor v. Fulton Cty.*, No. 1:08-CV-3242-RLV, 2011 WL 13269786, at *1 (N.D. Ga. May 5, 2011) (suit against party in his official capacity is *ipso facto* a suit against the governmental entity) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).

[5] This language carried through to the 2018 version of the Guidebook (at E-36 of the 2018 version), obviating any mootness issues that may have arisen with respect to an APA review of the document by publication of a new version of the Guidebook.

This claim is premised on the inaccurate belief that the HCQIA mandates that a provider be provided a hearing prior to a hospital or doctor submitting a report to the NPDB. As discussed above, the HCQIA section regarding hearings is part of an immunity safe harbor for private hospitals or doctors; it is not a statutory requirement prior to submission of an NPDB report. *Bryan*, 33 F.3d at 1321-22; *Zoher*, 2011 WL 5525338, at *2; *Pierson*, 2010 WL 4341354, at *16; *Long v. United States Dep't of Health & Human Servs.*, No. 18-CV-00458 (APM), 2019 WL 6051547, at *3 n.1 (D.D.C. Nov. 15, 2019) (rejecting argument that before an adverse report is submitted the subject must receive a hearing from the reporting hospital). The District Court for the District of Columbia previously rejected a similar claim, holding that "a requirement that the physician have knowledge of an investigation" in many instances "would mean that no reporting would occur, thereby frustrating the very purposes of the [HCQIA]." *Doe*, 139 F. Supp. 3d at 147 (D.D.C. 2015) (noting that neither the statute or the implementing regulations require that a surrender of privileges occur with knowledge of an investigation). Because a physician does not have a statutory right to a hearing under the HCQIA, nor is there any requirement that he be notified of any ongoing investigation, Plaintiff's assertion that the Guidebook provision on non-renewals is in contravention to the statutory language of the HCQIA fails, and Count I is subject to dismissal.

    **C.**    **Plaintiff has failed to state a claim for relief under the Privacy Act.**

Plaintiff has also asserted a claim under the Privacy Act under 5 U.S.C. § 552a(d)(2), alleging HHS improperly denied his request to amend the NPDB under the Privacy Act by removing the Adverse Report.

The Privacy Act, requires agencies to publish notice in the Federal Register of the existence and character of each Privacy Act system of records. *See* 5 U.S.C. § 552a(e)(4). As part of this notice, an agency must inform individuals of how an individual can contest their records. *See* 5 U.S.C. § 552a(e)(4)(H); *see also* 42 U.S.C. § 11136 (NPDB statute requiring Secretary to provide, by regulation, (1) for disclosure to practitioners of information, and (2) for procedures in cases of disputed accuracy).

Pursuant to this authority, and in a Federal Register notice dated March 30, 2012, HHS outlined the then-current procedures for contesting NPDB records, and referred individuals to the codification of those procedures at 45 C.F.R. § 60.14.[6] *See* 77 Fed. Reg. 19295, 19298-99 (Mar. 30, 2012) (HHS's Federal Register Notice, entitled "Privacy Act of 1974; Report of an Altered System of Records"). Similarly, a later Federal Register notice (with the same 'Privacy Act of 1974: Report of an Altered System of Records' title, and promulgated under the same legal authority) states, "all amendment requests will be governed by the procedures at 45 CFR 60.21." 78 Fed. Reg. 47322, 47326 (Aug. 5, 2013).

In short, these Federal Register notices were system of record notices issued per the Privacy Act itself, and they explicitly refer subjects of NPDB reports to the C.F.R. sections entitled "How to dispute the accuracy of National Practitioner Data Bank information" – the very process for disputing records that Plaintiff pursued before submitting his request under the Privacy Act, and which is the subject of Count III.

---

[6] At the time of the March 30, 2012 Federal Register notice, the relevant sections regarding disputing NPDB reports appeared at 45 C.F.R. § 60.14. These then moved to 45 C.F.R. § 60.16 and then to 45 C.F.R. § 60.21, where they can be found presently. *See* 78 Fed. Reg. 47210 (August 5, 2013).

In conjunction with the announcement of the procedures provided in 45 C.F.R. § 60.21 as discussed above, the NPDB was added as an exempt system, exempting it from certain portions of the Privacy Act.  Relevant here, the NPDB was excluded from subsections (d)(1)-(4) of the Privacy Act.  45 C.F.R. § 5b.11(b)(1)(ii) & (b)(2)(ii)(L); *Sabatini v. Price*, No. 17-CV-01597-AJB-JLB, 2018 WL 1638258, at *3 (S.D. Cal. Apr. 5, 2018), *aff'd sub nom. Sabatini v. Azar*, 749 F. App'x 588 (9th Cir. 2019).

The aforementioned notices regarding the NPDB's altered system of records, issued per the Privacy Act, were promulgated under the statutory and regulatory authority of the Secretary of the HHS to exempt that system from certain of the Privacy Act's provisions.  The purposes of the alteration/exemptions were (i) "to avoid revealing law enforcement investigative interest and compromising law enforcement investigations," (ii) to harmonize those exemptions with similar exemptions in another DHHS system of records (the Healthcare Integrity and Protection Data Bank), and (iii) "to add a new routine use pertaining to system security," again to make the NPDB system of records consistent with other HHS systems of records.  77 Fed. Reg. at 19295; 19299 ("The Secretary has exempted this system from certain provisions of the [Privacy] Act.  In accordance with 45 C.F.R. 5b.11(b)(ii)(L) [*sic* – should be 45 C.F.R. 5b.11(b)(2)(ii)(L)], this system is exempt from subsections 5 U.S.C. 552a(c)(3), (d)(1)-(4), (e)(4)(G) and (H), and (f).").

This exemption was not meant to – nor did it – entirely absolve the NPDB system of records from any duty to provide access or correction rights.  Instead, such rights were defined and codified in the NPDB's regulations.  As HHS stated in the notice of proposed

rulemaking creating this Privacy Act exemption for the NPDB, the exemption would "exempt the data bank from Privacy Act access and amendment procedures *in order to establish access and amendment procedures in the NPDB regulations.*"  76 Fed. Reg. 9295, 9296 (Feb. 17, 2011) (emphasis added).  Thus, instead of using the amendment request procedures in the Privacy Act, all amendment requests would henceforth be governed by 45 C.F.R. § 60.21.  45 C.F.R. § 5b.11(b)(2)(ii)(L) (current regulation, in which Secretary exempts NPDB system of records from certain provisions of Privacy Act, stating also "See § 60.21 of this subchapter for access and correction rights under the NPDB by subjects of the Data Bank.");  *Sabatini*, 2018 WL 1638258, at *3 ("Thus, it is clear to the Court and should be to Plaintiff at this point that the NPDB is exempt from the access, amendment, and notification provisions specified in section (d)(3)"); System of Record Notice 09-15-0054, available at https://www.hrsa.gov/about/privacy-act/09-15-0054.html (last visited on January 2, 2020); Guidebook at A-9.

Not surprisingly, this is the avenue Plaintiff first took when he submitted his request that HHS review the Adverse Report under 45 C.F.R. § 60.21.  It is also the reason HHS considered Plaintiff's request for amendment under the Privacy Act as a request for reconsideration of the Dispute Resolution Decision resulting form that initial request under § 60.21, as the Privacy Act afforded him no rights in those circumstances.  In other words, rather than simply denying Plaintiff's request under the Privacy Act because it was submitted under improper authority, HHS opted to treat the request as one that was actually permitted under the law and conducted a review of that request under 45 C.F.R. § 60.21 (which is now subject to judicial review under the APA – *see* Count III).

Prior to issuance of these notices and exemptions, one district court did hold that a physician seeking to amend a record submitted to the NPDB could have requested such amendment under asserted a claim under 5 U.S.C. § 552a(d)(2) of the Privacy Act. *Compare Doe v. Thompson*, 332 F. Supp. 2d 124 (D.D.C. 2004) (holding procedures to challenge adverse reports under HCQIA and associated regulations did not supersede rights under the Privacy Act), *with Doe*, 871 F. Supp. at 814-15 (holding reporting requirements under the HCQIA did supersede any claims under the Privacy Act). However, as recognized by the District Court for the Southern District of California in *Sabatini*, 2018 WL 1638258, at n.5, whatever persuasive value the logic of that case may have had at one time, it is no longer persuasive because those cases concerned Privacy Act requests made many years before the NPDB's exemption from the Privacy Act.[7]

Because Plaintiff has no right to seek amendment of the Adverse Report under 5 U.S.C. § 552a(d)(2), but rather must channel his requests through the procedures of 45 C.F.R. § 60.21, he cannot bring a Privacy Act claim in this Court pursuant to 5 U.S.C. § 552a(g). Thus, Plaintiff's Privacy Act claim in Count IV should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[7] In *Doe v. Rogers*, 139 F. Supp. 3d 120, 168 (D.D.C. 2015), the District Court declined to reach the issue regarding the propriety of seeking an amendment of an adverse report pursuant to the Privacy Act because it was remanding the case to the Secretary on other grounds. But, like in *Doe v. Thompson*, that case involved a 2009, pre-exemption adverse report. Thus the fact that the Court did not reject the claim out of hand is of no moment.

18

**D.    Claims for injunctive relief and declaratory judgment are not separate causes of action.**

Plaintiff brings a standalone claim for injunctive or mandamus relief against HHS (Count VI).  However, injunctive relief and writs of mandamus are remedies, not causes of action.  *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1289 (M.D. Fla. 2009), *aff'd*, 451 F. App'x 862 (11th Cir. 2012); *Griffin v. Lee Cty. Bd. of Educ.*, No. 3:16-CV-27-SMD, 2019 WL 1338896, at *6 (M.D. Ala. Mar. 25, 2019).  The same defect apples to Plaintiff's claim for declaratory judgment (Count V).  *Burke v. Johnson*, No. 616CV199ORL41TBS, 2016 WL 9503732, at *3 (M.D. Fla. June 27, 2016) ("Plaintiff succumbs to the not infrequent mistake of characterizing declaratory judgment as a claim in itself. It, however, is not a cause of action; it is a remedy."); *Griffin*, 2019 WL 1338896, at *6.  In addition to being improperly labeled as separate counts, Plaintiff would not be entitled to a writ of mandamus in this case in any event given the APA provides an adequate basis for review of the Secretary's decision to decline Plaintiff's request to remove the Adverse Report from the NPDB.  *See Brinklys v. Johnson*, 175 F. Supp. 3d 1338, 1352 (M.D. Fla. 2016).  Should Plaintiff prevail on any of his other claims for which injunctive or declaratory relief is proper and requested, he may be entitled to it in connection with that claim.  *See Burke*, 2016 WL 9503732, at *3.  However, Counts V and VI should be dismissed as a standalone claims.

**IV.     Conclusion**

For the foregoing reasons, all of the claims in Plaintiff's Complaint should be dismissed except Count III, requesting judicial review under the APA of HHS's Dispute Resolution Decision declining Plaintiff's request to remove the Adverse Report from the NPDB.

Dated:  January 6, 2020                    Respectfully submitted,

                                           MARIA CHAPA LOPEZ
                                           United States Attorney

                             By:     */s/ Adam R. Smart*_____
                                     ADAM R. SMART
                                     Assistant United States Attorney
                                     USA No.  195
                                     400 W. Washington Street, Suite 3100
                                     Orlando, Florida 32801
                                     Telephone: (407) 648-7500
                                     Facsimile: (407) 648-7588
                                     Email:  adam.smart@usdoj.gov

                                     *Counsel for Defendant*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 6, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participant:

        George F. Indest III, Esq.
        The Health Law Firm

                                     */s/ Adam R. Smart*_____
                                     ADAM R. SMART
                                     Assistant United States Attorney

20