UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN DOE, M.D.,

      Plaintiff,

v.                               Case No. 6:19-cv-02074-Orl-40LRH

ALEX M. AZAR II, as Secretary, U.S.
Department of Health and Human
Services, and his successors,

      Defendant.

_____/

**REPLY IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS**

Pursuant to the Court's Order of February 26, 2020 (Doc. 23), Defendant, the Secretary of the United States Department of Health and Human Services ("HHS"), by and through undersigned counsel, files this reply in support of Defendant's motion to dismiss Counts I, II, IV, V and VI in Plaintiff's complaint.  The essence of this case is Plaintiff's request for APA review of the Secretary's decision (the "Dispute Resolution Decision") not to remove an adverse report about Plaintiff (the "Adverse Report") submitted to the National Practitioner Data Bank ("NPDB") by his former employer, Palmetto General Hospital ("PGH").  *See* Doc. 1 at Count III.  This aspect of the case is a standard one, often addressed by the federal courts with respect to adverse reports submitted to the NPDB.  *See, e.g., Leal v. Sec'y, U.S. Dep't of Health & Human Servs.*, 620 F.3d 1280 (11th Cir. 2010); *Long v. United States Dep't of Health & Human Servs.*, No. 18-CV-00458 (APM), 2019 WL 6051547 (D.D.C. Nov. 15, 2019); *Doe v. Rogers*, 139 F. Supp. 3d 120 (D.D.C. 2015).  Nevertheless, in addition Plaintiff has asserted a slew of other

claims for which this Court lacks jurisdiction or do not state claims for relief, and which serve to confuse the proper scope of this litigation.  In so doing, Plaintiff conflates matters that might be raised as arguments in connection with his request for APA review of the Secretary's Dispute Resolution Decision, with stand-alone claims.  For example, Plaintiff's challenge to the alleged lack of "due process" PGH gave him, assertion that the NPDB Guidebook is invalid, claim that the agency's interpretation of the HCQIA in the applicable regulations and the NPDB Guidebook violates the nondelegation doctrine, and questions concerning what deference, if any, are to be applied to the Secretary's interpretations in the NPDB Guidebook, are all matters that might be raised in the context of the APA review of the Secretary's Dispute Resolution Decision.  They are not stand-alone claims, divorced from the request for APA review.  Plaintiff similarly asserts arguments to be addressed on his APA review claim to assert that he also has a separate Privacy Act claim.

The other issue this reply addresses is Plaintiff's assertion of an entirely new claim for the first time in his response – that HHS allegedly exceeded its statutory authority in promulgating 45 C.F.R. § 60.21, and a request that this Court declare certain aspects of the regulation invalid.

**A.      Plaintiff asserts a new claim in his response that is not properly before the Court.**

In Plaintiff's responsive briefing he has asserted an entirely new claim, namely that HHS allegedly exceeded its statutory authority in promulgating 45 C.F.R. § 60.21(c). (Doc. 19 at 13-15).  Plaintiff's complaint only raised the issue of whether HHS's

publication of the NPDB Guidebook was contrary to the HCQIA, and thus should be declared invalid.  (Doc. 1 at Count I, ¶¶ 70-71).  He did not challenge the promulgation of the regulation itself, and in fact makes no reference to the regulation in his complaint. Raising the claim in a response to a motion to dismiss is not proper, and the Court should refuse to consider Plaintiff's arguments in this regard.  *Yeh Ho v. Wells Fargo Bank, N.A.*, 739 F. App'x 525, 531 (11th Cir. 2018) (refusing to consider claim raised for the first time in a responsive brief to a motion to dismiss); *Mason v. Churchman*, 723 F. App'x 868, 871 (11th Cir. 2018) (affirming dismissal of complaint where claim was only raised in response to motion to dismiss, not in a properly amended complaint); *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-CV-186-J-34JRK, 2018 WL 905752, at *n.16 (M.D. Fla. Feb. 15, 2018) (refusing to consider new claim raised in response to motion to dismiss); *Winders v. CitiMortgage, Inc.*, No. 3:13-CV-56 CDL, 2013 WL 4039399, at n.1 (M.D. Ga. Aug. 7, 2013) (refusing to consider a new claim raised only in a response brief to a motion to dismiss).  *See also Ivey v. First Quality Retail Serv.*, 490 F. App'x 281, 287 (11th Cir. 2012) ("[T]he proper procedure for a plaintiff to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)").  If Plaintiff truly wishes to challenge the validity of 45 C.F.R. § 60.21(c), then he must amend his complaint to do so.[1]  However in the present procedural posture, the Court should not permit a challenge to the validity of 45 C.F.R. § 60.21 to proceed.

---

[1] Defendant intends to move to dismiss any such claim should Plaintiff amend his complaint to bring a challenge to the validity of 45 C.F.R. § 60.21(c), which has been recognized as a valid exercise of HHS's rulemaking authority by several courts, *see Doe*, 139 F. Supp. 3d at 148 (holding Section 60.21's interpretation "of the limited scope of

**B.      Plaintiff's response conflates issues that might be raised as arguments in APA review with separate claims.**

Plaintiff's briefing muddies the waters of what this case is about; however, it is really quite simple.  Did the Secretary properly deny his request to remove the Adverse Report from the NPDB under the applicable law and standards?  What those standards are, what the proper scope of inquiry is, and what authority and guidance is properly relied on in making those determination are all matters to be addressed in ruling on Plaintiff's Count III – his request for APA review of the Secretary's Dispute Resolution Decision. For example, the proper lens to view Plaintiff's arguments about the NPDB Guidebook are not as stand-alone clams requesting the NPDB Guidebook be declared invalid at the outset.  But rather, for Plaintiff to challenge specific interpretations from the NPDB Guidebook relevant to the case at hand as not binding on this Court in its APA review of the Secretary's Dispute Resolution Decision.   Each of those types of arguments presented in Plaintiff's response are highlighted below.

---

Secretarial Review [is] in harmony with the Health Care Quality Improvement Act, which mandates that the Secretary 'by regulation, provide for ... procedures in the case of disputed accuracy of the information.'") (quoting 42 U.S.C. § 11136(2)); *Doe v. U.S. Dep't of Health & Human Servs.*, 871 F. Supp. 808, 812 (E.D. Pa. 1994), *aff'd*, 66 F.3d 310 (3d Cir. 1995).  In addition, numerous courts, including the Eleventh Circuit, have recognized the limited scope of the review HHS provides pursuant to 45 C.F.R. § 60.21 without any indication that these limitations are invalid.   *See Leal*, 620 F.3d at 1284  ("Because information in the Data Bank is intended only to fully notify the requesting hospital of disciplinary action against a physician and the charges on which that action was based, the Secretary's review of information in the Data Bank is limited in scope."); *Long*, 2019 WL 6051547, at *4.

### 1.   Deference.

Plaintiff asserts that the NPDB Guidebook is an unpromulgated rule and therefore not entitled to any deference when the Court considers whether to uphold the Dispute Resolution Decision.  (Doc. 19 at 19-21).  The language of this section of Plaintiff's brief implicitly recognizes this argument is relevant to the APA review claim in Count III. Nevertheless he has asserted it in connection with his Count I.

It is a standard part of APA review to determine the content and meaning of agency guidance, such as the NPDB Guidebook, and what, if any deference the Court should give to the Agency's interpretations contained therein.   *See Leal*, 620 F.3d at 1282 (indicating without specifically holding that the NPDB Guidebook is entitled to *Skidmore* deference when conducting APA review of Secretary's refusal to remove an adverse report); *Doe v. Leavitt*, 552 F.3d 75, 79-80 (1st Cir. 2009) (noting on APA review of the Secretary's refusal to remove an adverse report, without deciding which deference to apply, that under either standard of deference the Secretary's interpretation of the term "investigation" withstands scrutiny); *Doe*, 139 F. Supp. 3d at 136 (same).  Whether the NPDB Guidebook is entitled to *Chevron*, *Skidmore* or no deference at all is simply not an issue relevant to whether this Court has jurisdiction over Plaintiff's other claims or whether those other counts state a claim for relief, rather it is a question to address during the Court's APA review of the Secretary's Dispute Resolution Decision.

### 2.   Nondelegation Doctrine.

Plaintiff also asserts that pursuant to the nondelegation doctrine, Congress, and in turn HHS, have impermissibly delegated to private health entities authority to ensure due

process in professional review activities.  Plaintiff argues that by refusing to consider the process that Plaintiff received when reviewing the accuracy of the Adverse Report, the Secretary has impermissibly delegated his power to evaluate the due process given physicians during professional review activities.[2]

The nondelegation doctrine arises from Article I of the Constitution.  The Eleventh Circuit has explained the basic contours of the nondelegation doctrine as follows:

> Article I, section 1 of the Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States...." U.S. Const. art. I, § 1. In *Mistretta v. United States*, 488 U.S. 361 [ ] (1989), the Supreme Court reiterated the long-established principle that "'the integrity and maintenance of the system of government ordained by the Constitution' mandate that Congress generally cannot delegate its legislative power to another Branch." *Id.* at 371-72 . . . .

*United States v. Brown*, 364 F.3d 1266, 1270 (11th Cir. 2004) (internal citations omitted).

However, the Eleventh Circuit noted that Congress may delegate authority when it "lays 'down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform . . . .'" *Id.* at 1271.  Congressional legislation "which prescribes essential standards and basic legislative policy and delegates to an administrator authority for promulgation of rules and regulations is constitutionally permissible, provided the standards are 'sufficiently definite and precise to enable Congress, the courts and the public to ascertain whether the Administrator . . . has conformed to those standards.'" *Id.* (quoting *United States v. Sans*, 731 F.2d 1521, 1527-28

---

[2] Of note, it appears this section challenges both the regulation, 45 C.F.R. § 60.21 and the NPDB Guidebook, under the nondelegation doctrine.  Again, because Plaintiff did not raise a challenge to Section 60.21 in his complaint, he may not do so now.

(11th Cir.1984) and *United States v. Womack*, 654 F.2d 1034, 1037 (5th Cir. Unit B 1981)). It is a rare instance indeed that a delegation of congressional authority is found to violate the nondelegation doctrine. *Gundy v. United States*, --- U.S. ---, 139 S. Ct. 2116, 2129 (2019) ("Only twice in this country's history (and that in a single year) have we found a delegation excessive—in each case because 'Congress had failed to articulate *any* policy or standard' to confine discretion.").

However, the Court need not wade into this issue of constitutionality, because here Plaintiff asserts that it is HHS's actions, not those of Congress, that violate the doctrine. (Doc. 19 at 17, 19 ("Ignoring the conduct of the reporting entity constitutes an unlawful delegation of *DHHS's* statutory responsibility to ensure adequate peer review to a private party.") (emphasis added)). Plaintiff goes so far as to assert that the nondelegation doctrine bars the "sub-delegation" of Congressional authority by an agency. (*See id.*) This is in error. The Supreme Court has made clear that "the proper focus of nondelegation analysis is on the terms of Congress' delegation to the agency or other governmental body, not on the terms of the agency's subsequent exercise of the delegated authority. *United States v. Martinez-Flores*, 428 F.3d 22, 27 (1st Cir. 2005) (citing *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472-473 (2001)). Thus, Plaintiff's assertion that HHS's regulations and NPDB Guidebook violate the nondelegation doctrine has no basis in law, and the Court should reject any attempt to rely on that doctrine here. As explained in *Martinez-Flores*, "a congressional assignment of power not by its terms violative of the nondelegation doctrine cannot become so because of the breadth with which the agency exercises it. If it is the agency, and not Congress, whose exercise of authority is too broad,

the relevant objection would not be that Congress' delegation was unconstitutional, but that the agency had exceeded its statutory authority." *Martinez-Flores*, 428 F.3d at n.2.   In other words, as is the case with all of the arguments addressed herein, any related argument about HHS's actions is properly asserted in the context of APA review – i.e. that the Secretary's Dispute Resolution Decision was arbitrary and capricious, unconstitutional, in excess of the agency's power, or contrary to law.  *See* 5 U.S.C. § 706.

### 3.    Plaintiff's due process claim.

While Plaintiff purports to assert a due process claim against Defendant, he has disavowed any reliance on the HCQIA as a source of that claim (Doc. 19 at 21-22), and similarly has not alleged a Constitutional due process violation (which Plaintiff cannot assert for the unrebutted reasons in Defendant's motion to dismiss[3]).  Rather, Plaintiff's response to Defendant's motion to dismiss his due process claim is to raise arguments relevant to two of the primary issues to be considered under the Court's APA review of the Dispute Resolution Decision: (1) whether the resignation at issue here was "reportable," (Doc. 9 at 22); *see Leal*, 620 F.3d at 1285 (analyzing whether event at issue was "reportable"); and (2) issues regarding the "accuracy" of the Adverse Report,

---

[3] Subsequent to filing the Defendant's motion to dismiss, the district court for the District of Columbia issued its opinion in *McKoy v. Spencer*, No. CV 16-1313 (CKK), 2019 WL 400615, at *10 (D.D.C. Jan. 31, 2019), noting that "[m]ultiple courts which have considered the issue have concluded that reports made to data banks do not implicate constitutionally protected liberty or property interests."  The *McKoy* case is consistent with the other cases cited in Defendant's motion on this issue.

specifically the case law concerning evidence of fraud.[4]  *See Doe*, 139 F. Supp. 3d 120, 149 (D.D.C. 2015) (stating that the Secretary cannot "ignore actual evidence of fraud" in connection with its determination of whether the adverse report is accurate); *Long*, 2019 WL 6051547, at *4 (stating that if the doctor puts forth "actual evidence" of fraud, the Secretary must "properly consider this evidence" in connection with its determination that the report is accurate).  Neither of these matters salvages Plaintiff's due process claim, and should instead be reserved for consideration of Plaintiff's APA review claim, based on the administrative record.  Once again, Plaintiff's own words show he understands this.  He ends his section on due process with the following: if the Secretary "conducts Secretarial Review pursuant to NPDB Guidebook page E-33 without any regard for whether the physician had knowledge of a pending investigation, *it exceeds its statutory authority and acts in an arbitrary and capricious manner*."  (Doc. 19 at 27 (emphasis added))  Thus, Plaintiff's own response acknowledges that he is really attempting to challenge the due process aspect of this case under the very APA standards the Court is to apply with respect to Count III.  For these reasons, and those in Defendant's motion to dismiss, the Court should dismiss Plaintiff's due process claim.[5]

---

[4] To be clear, while Plaintiff cites these two cases discussing actual evidence of fraud, Plaintiff has not alleged fraud on the part of anyone at PGH, *see generally* Doc. 1, nor is there any indication he did so in his request for Secretarial review of the Adverse Report, *see* Exhibits to Complaint filed under seal at Doc. S-20.

[5] Of note, Congress did not leave physicians without an avenue to challenge alleged inadequacies in the process they faced during professional review activities.  By creating a safe harbor for immunity from damages in law suits against hospitals and other health entities arising from actions taken in connection with professional review actions, the implication is that Congress expected that procedures that do not meet Section 11112

### 4.      Plaintiff's Privacy Act claim.

Defendant moved to dismiss Plaintiff's Privacy Act claim on the basis that the NPDB was added as an exempt system, exempting it from subsections (d)(1)-(4) of the Privacy Act.[6]   Plaintiff's argument in response is two-fold.   The bulk of Plaintiff's argument in this section of his brief is more properly directed to his request for APA review of the Secretary's Dispute Resolution Decision, e.g. the definition of "investigation" (*see* Doc. 19 at 28-29) and whether the proper scope of the Secretary's evaluation of the Adverse Report requires an evaluation of whether the physician received a hearing or notice of the investigation (*see id.* at 29).   These assertions say nothing about whether HHS has exempted the NPDB from the amendment provisions of the Privacy Act, which was the basis of Defendant's motion to dismiss this particular claim.

---

could subject health entities to monetary liability for actions taken in response to such professional review activities.  In other words, if a physician believes that the procedures he encountered did not come within the safe harbor for professional review activities set forth by Congress, then he could potentially bring suit against the private health entity without the specter of an immunity defense.  *See, e.g., Bryan v. James E. Holmes Reg'l Med. Ctr.*, 33 F.3d 1318, 1321 (11th Cir. 1994).  In addition, even if monetary liability was precluded, the statute does not bar injunctive or declaratory relief against the private hospital.  *Id.* at 1322 ("Congress granted immunity from monetary damages to participants in properly conducted peer review proceedings while preserving causes of action for injunctive or declaratory relief for aggrieved physicians.").  It is unknown whether Plaintiff has brought suit against PGH, and Defendant takes no position on whether Plaintiff could prevail in such an action.

[6] *See* Doc. 9 at 15-17 (citing 45 C.F.R. § 5b.11(b)(1)(ii) & (b)(2)(ii)(L); 77 Fed. Reg. 19295, 19298-99 (Mar. 30, 2012); 78 Fed. Reg. 47322, 47326 (Aug. 5, 2013).77 Fed. Reg. at 19295, 19299; *Sabatini v. Price*, No. 17-CV-01597-AJB-JLB, 2018 WL 1638258, at *3 (S.D. Cal. Apr. 5, 2018), *aff'd sub nom. Sabatini v. Azar*, 749 F. App'x 588 (9th Cir. 2019)).

Plaintiff's other, more pertinent avenue of attack to the motion to dismiss his Privacy Act claim is to assert that district court's recognition of HHS's exemption of the NPDB from the amendment provisions of the Privacy Act in *Sabatini v. Price* is irrelevant because the district court also addressed the statute of limitations for bringing a Privacy Act claim. (Doc. 19 at 27-28). Two points in this regard. First, the Court explicitly stated in rejecting one of Plaintiff's arguments that "it is clear to the Court and should be to Plaintiff at this point that the NPDB is exempt from the access, amendment, and notification provisions specified in section (d)(3)." 2018 WL 1638258, at *3. Plaintiff's claim that the district court did not "decide" this is without merit. Second, the plaintiff in *Sabatini* actually included claims under the Privacy Act that are not subject to the relevant exemption – namely damages claims for Privacy Act disclosure violations under other subsections not covered by the exemption, and thus which required resolution of the statute of limitations. *See Sabatini*, 2018 WL 1638258, at *2.

More importantly, though, Plaintiff does not make any effort to address the regulatory authority set forth in Defendant's motion that explains exactly how and when HHS exempted the NPDB from the amendment provisions of the Privacy Act. The *Sabatini* court was cited to show that at least one court has recognized this exemption. Courts routinely dismiss Privacy Act claims when they relate to access or amendment of records which that have been exempted from Section 552a(d). *See, e.g., Arnold v. U.S. Secret Serv.*, 524 F. Supp. 2d 65, 66 (D.D.C. 2007); *Harrison v. Federal Bureau of Prisons*, 248 F. Supp. 3d 172, 180-81 (D.D.C. 2017); *Tyler v. U.S. Fed. Bureau of Prisons*, 315 F. Supp. 3d 313, 317 (D.D.C. 2018), *aff'd sub nom. Tyler v. Fed. Bureau of Prisons*, No. 18-5187, 2019

11

WL 1752626 (D.C. Cir. Mar. 28, 2019).  Plaintiff has not asserted the exemption did not

occur, nor leveled a challenge to that exemption.  For these reasons, and those in

Defendant's motion to dismiss, the Court should dismiss Plaintiff's Privacy Act claim.

**C.    Conclusion.**

For the foregoing reasons, and those stated in Defendant's motion to dismiss, all

of the claims in Plaintiff's Complaint should be dismissed except Count III, which requests

APA review of the Secretary's Dispute Resolution Decision.

Dated:  February 28, 2020                Respectfully submitted,

                                         MARIA CHAPA LOPEZ
                                         United States Attorney

                            By:   */s/ Adam R. Smart*_____
                                         ADAM R. SMART
                                         Assistant United States Attorney
                                         USA No.  195
                                         400 W. Washington Street, Suite 3100
                                         Orlando, Florida 32801
                                         Telephone: (407) 648-7500
                                         Facsimile: (407) 648-7588
                                         Email:  adam.smart@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on February 28, 2020, I electronically filed the
foregoing document with the Clerk of the Court using the CM/ECF system, which will
send notice of the filing to the following CM/ECF participant:

        George F. Indest III, Esq.
        The Health Law Firm

                                         */s/ Adam R. Smart*_____
                                         ADAM R. SMART
                                         Assistant United States Attorney