## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Orlando, Florida

JOHN DOE, M.D.,

        Plaintiff,                    No.:  6:19-cv-02074-PGB-LRH

vs.

ALEX M. AZAR II, as Secretary, U.S.         **Amended Complaint for Review of**
Department of Health and Human          **Final Agency Action, Breach of**
Services, and his Successors, and           **Contract, Damages, Declaratory**
LIFEMARK HOSPITALS OF FLORIDA,    **Judgment, and Injunctive Relief,**
INC., d/b/a Palmetto General Hospital     **Temporary and Permanent**

             Defendants.             **JURY TRIAL REQUESTED**
_____/

### AMENDED COMPLAINT FOR REVIEW OF FINAL AGENCY ACTION,
### DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF,
### TEMPORARY AND PERMANENT

**COMES NOW** Plaintiff John Doe, M.D. ("Dr. Doe"), and files this Amended

Complaint, to sue Defendant Alex M. Azar II, as Secretary of the United States Department

of Health and Human Services ("DHHS"), and adding as Defendant Lifemark Hospitals of

Florida, Inc., d/b/a Palmetto General Hospital (referred to herein as "Palmetto General

Hospital" or "PGH"), a Florida for profit corporation, referring back in time to the filing of

the original Complaint in this matter, stating as follows:

## SUMMARY OF THE ACTION

1.      This is a case involving a false report submitted to the National Practitioner Data Bank ("NPDB") on Dr. Doe.  Exhibit "1."  Palmetto General Hospital ("PGH") reported Dr. Doe to the NPDB without cause and without affording him the right to a hearing and other rights required by law.  The report was without cause because Dr. Doe was not under a formal investigation when his clinical privileges at PGH expired.  Additionally, PGH did not provide Dr. Doe with the opportunity for a hearing as mandated by the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 et seq. ("HCQIA").

2.      Dr. Doe, appealed the adverse NPDB report to DHHS.  His appeal was denied on July 31, 2018.  Exhibit "2."  Dr. Doe later challenged the incorrectly submitted report by filing a Privacy Act request with DHHS.  However, it was denied on March 28, 2019.  Exhibit "3."  The present suit challenges the final agency actions and pleads for damages and other relief.

## GENERAL ALLEGATIONS

### A.  The Parties

3.      Plaintiff John Doe, M.D., is a medical doctor licensed in the state of Florida. He resides in Melbourne, Brevard County, Florida.  Dr. Doe was the subject of an adverse report filed with the NPDB by Mark Racicot, the Chief Operating Officer for Palmetto General Hospital.

4.      Defendant Alex M. Azar II is the Secretary of the United States Department of Health and Human Services, duly appointed, qualified, and acting as the administrative head of such agency.  As such, he is responsible for its acts including the Dispute Resolution Decision issued by DHHS on July 31, 2018, Exhibit "2," and the Privacy Act Dispute Resolution Decision issued by DHHS on March 28, 2019, Exhibit "3."

5.      The United States Department of Health and Human Services (hereinafter referred to as "Defendant DHHS" or "DHHS") is the federal agency designated under the Health Care Quality Improvement Act of 1986, as amended, 42 U.S.C. § 11101 et seq. ("HCQIA") to handle and oversee the receipt and filing of reports from health care entities, such as Palmetto General Hospital, which reports include Adverse Action Reports and Correction Reports.

6.      The National Practitioner Data Bank ("NPDB") is a subpart of and run by DHHS.  The NPDB keeps and maintains Adverse Action Reports and Correction Reports on health care practitioners in accordance with 42 U.S.C. § 11101 et seq. ("HCQIA"), and 45 C.F.R. Part 60. The NPDB furnishes those reports to health care facilities where the physician in question has worked or is seeking employment.

7.      Defendant Lifemark Hospitals of Florida, Inc., is a Florida for profit corporation, doing business in Hialeah, Florida,  under the name Palmetto General Hospital (hereinafter referred to as "PGH" or "Palmetto General Hospital").  While its principal

administrative office is located in Dallas, Texas, PGH's operations are principally based on the hospital campus in Hialeah, Florida, and its principal place of business is Hialeah, Florida.

## B. <u>Jurisdiction and Venue</u>

8.    This action arises under 5 U.S.C. §§ 703 & 704 (Review of Agency Action), 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1346(b)(1), 28 U.S.C. § 1361 and 28 U.S.C. § 1367, under which this Court has jurisdiction.   Any damages alleged exceed $75,000, exclusive of attorney's fees, costs, and interest.

9.    Venue is proper in accordance with 5 U.S.C. § 703, and 28 U.S.C. § 1391(e). Additionally, a substantial part of the events giving rise to the underlying claim occurred within the Middle District of Florida, the harm to the Plaintiff occurred in the Middle District of Florida, and Plaintiff is a resident of the Middle District of Florida.

## C. <u>Standing</u>

10.    Plaintiff has suffered a substantial loss of income and employment opportunities. He has suffered lost professional fees and has lost patients because of the continuing actions of the Defendants.   Additionally, Plaintiff is the subject of a derogatory, adverse NPDB report, available to others, which damages his personal and professional reputations.

11.    If the actions of the Defendants are allowed to continue, then Plaintiff will further suffer a loss of employment opportunities, patients, and income, further harm to his personal and professional reputations, and will have his ability to provide medical services in hospitals restrained or prevented.

12.     All conditions precedent to bringing this action have been completed, satisfied or waived, including exhausting all administrative remedies and all appeals required by statute.

**D.  National Practitioner Data Bank (NPDB)**

13.     The National Practitioner Data Bank was created by the Health Care Quality Improvement Act.

14.     According to Defendant DHHS:

> The NPDB is a confidential information clearing-house created by Congress with the primary goals of improving health care quality, protecting the public, and reducing health care fraud and abuse in the United States. Acting primarily as a national flagging system, the NPDB provides information that permits queriers to perform comprehensive reviews of the credentials of health care practitioners, entities, providers, and suppliers.  The NPDB collects information on medical malpractice payments and certain adverse actions and discloses that information to eligible entities. . . .

> The NPDB is meant to be used as one of many tools available to health care entities of all types as they make licensing, certification, hiring, credentialing, contracting, and similar decisions. The NPDB can provide valuable background information, but health care entities should use the NPDB in conjunction with other resources when making personnel and contracting decisions.

(U.S. DHHS, Health Resources and Services Administration, NPDB Guidebook (Rockville, Md., April 2015) p. E-1.)

15.     Defendant DHHS has established certain policy decisions and guidelines interpreting the HCQIA, without undertaking formal rulemaking procedures required by the Administrative Procedure Act, 5 U.S.C. § 701, et seq.  One of these is the NPDB Guidebook published by or under the authority of Defendant DHHS.

16.     According to Defendant DHHS:

> The NPDB Guidebook serves as a policy manual. It is one of a number of efforts to inform the U.S. health care community and others about the National Practitioner Data Bank (NPDB) and the requirements established by the laws governing the NPDB, primarily:
>
> -- Title IV of the Health Care Quality Improvement Act of 1986 (HCQIA), Public Law 99-660 (referred to as "Title IV"). . . .

(U.S. DHHS, Health Resources and Services Administration, NPDB Guidebook (Rockville, Md., April 2015) p. A-1.)

17.     The version of the NPDB Guidebook quoted above is the version that was in effect at all times relevant to this matter.

### E.  History and Background of the Action

18.     On April 17, 2014, Dr. Doe was diagnosed with sleep apnea syndrome with associated hypoxemia.

19.     Sleep apnea is a potentially serious sleep disorder in which breathing repeatedly stops and starts while the person is asleep.

20.     Hypoxemia is a condition where the person has an abnormally low concentration of oxygen in their blood and can be associated with sleep apnea.

21.     The combination of sleep apnea and hypoxemia can result in a loss of energy and extreme fatigue during waking hours.

22.     The most common way of treating sleep apnea is with a continuous positive airway pressure ("CPAP") machine, which provides continuous airflow to the person while they are sleeping.

23.     From September 2014 to July 13, 2016, Dr. Doe was fully credentialed at and provided physician services at Palmetto General Hospital, located in Hialeah, Florida.

24.     From April 17 to October 6, 2014, Dr. Doe experienced difficulty with maintaining current and contemporaneous medical records due the loss of energy he suffered from his sleep apnea.

25.     On October 6, 2014, Palmetto General Hospital's Medical Care Peer Review Committee met with Dr. Doe to discuss the timeliness of his medical records.

26.     On October 20, 2014, the Medical Care Peer Review Committee wrote a letter to and informed Dr. Doe that it was assigning him a B2 rating, which stands for "Behavior with Opportunity for Improvement," that it was requesting he complete ten (10) days of

Cerner[1] training starting on October 20, 2014, and that the Medical Care Peer Review Committee would be monitoring and reviewing Dr. Doe's daily patient progress notes.

27.    Dr. Doe complied with all of the Medical Care Peer Review Committee's requirements and recommendations.

28.    On September 16, 2015, the Medical Care Peer Review Committee again met with Dr. Doe to discuss tardy medical records.

29.    On September 23, 2015, the Medical Care Peer Review Committee completed its investigation and informed Dr. Doe that it decided to place him on 100% review for timeliness of documentation until further notice.

30.    Other than the review of his records, Dr. Doe was never informed of any investigation, Professional Peer Review, or any disciplinary action against him by Palmetto General Hospital or its Medical Care Peer Review Committee.

31.    On October 13, 2015, Dr. Doe requested medical leave for six (6) months from Palmetto General Hospital in order to obtain treatment for and recover from his sleep apnea.

32.    During Dr. Doe's medical leave, he realized that his CPAP machine had been leaking fluid and was not operating properly while he slept, thereby resulting in his prolonged fatigue even after using the CPAP machine.   Dr. Doe obtained a new CPAP machine to remedy this issue.

_____

[1]    Cerner Corporation is an American supplier of health information technology solutions. It provides the electronic health record (EHR) system that Palmetto General Hospital uses in its hospital.

33.     On March 20, 2016, Dr. Doe informed Palmetto General Hospital's Medical Staff Office that he would be returning to work at Palmetto General Hospital at a minimal level of activity as he took the time to establish his own private practice in the area.

34.     On April 1, 2016, the Director of the Medical Staff at Palmetto General Hospital, informed Dr. Doe that all staff members who were on leave must apply to the Credentials/Ethics Committee of Palmetto General Hospital for reinstatement.

35.     On June 15, 2016, the Credentialing Coordinator for the Physician Support Services/Medical Staff Office for Palmetto General Hospital, wrote a letter to Dr. Doe regarding an "Invitation to Credentials/Ethics Committee."

36.     In the letter, PGH informed Dr. Doe that the Credentials Committee members requested to meet with Dr. Doe and that he was scheduled to appear in front of and meet with the Credentials/Ethics Committee to discuss his reinstatement from his leave of absence at PGH on July 21, 2016.

37.     Ms. Cruz's letter made no mention of any investigation of Dr. Doe's conduct or any contemplated adverse clinical privileges action.

38.     On July 13, 2016, Dr. Doe resigned from Palmetto General Hospital because he obtained employment with Family Physicians of Winter Park, P.A., located in Winter Park, Florida. Dr. Doe chose to move from the Melbourne area to the Winter Park area solely because his economic situation in Hialeah, Florida, was not sustainable for him.

39.     Dr. Doe did not move to the Winter Park area in order to avoid any adverse disciplinary action against him.

40.     Dr. Doe was not aware of nor made aware that Palmetto General Hospital was considering any adverse disciplinary action against him or of any investigation of him.  Dr. Doe was not informed of any hearing rights or a hearing.  Palmetto General Hospital accepted Dr. Doe's resignation.

41.     Defendant PGH had knowledge of the falsity of the information it provided to the NPDB.  Furthermore, Defendant PGH knew that the incidents it reported to the NPDB were not, in fact, ones which were authorized to be reportable pursuant to law and regulations.

42.     On August 8, 2016, less than one (1) month later, Palmetto General Hospital, filed an adverse report with the NPDB against Dr. Doe.  Palmetto General Hospital classified the report as follows:

> VOLUNTARY SURRENDER OF CLINICAL PRIVILEGE(S), WHILE UNDER, OR TO AVOID, INVESTIGATION RELATING TO PROFESSIONAL COMPETENCE OR CONDUCT.

Exhibit "1" (capitalization in original).

43.     Palmetto General Hospital's adverse report provides a description of the events that led to the filing of the adverse NPDB report against Dr. Doe.  The description does not mention any investigation or Focused Professional Peer Evaluation of Dr. Doe.  Exhibit "1."

44.     The adverse NPDB report was incorrect because Dr. Doe had not been under any investigation at the time he resigned, was not aware of any investigation or any other type of ongoing action against him, and did not voluntarily surrender his clinical privileges while he was under such investigation.

45.     Furthermore, PGH never provided Dr. Doe with:

a.     Any notice of any pending investigation or action against him;

b.     Any specific charge or complaint against him;  or

c.     Any right to request a hearing.

### F.  Statutory Requirements for Report to NPDB

46.     Pursuant to the law, a hospital is required to file a report with the NPDB when that hospital:

> (2)  accepts the surrender of clinical privileges of a physician  (i)  while the physician is <u>under an investigation</u> by the entity relating to possible incompetence or improper professional conduct, or  (ii)  in return for not conducting such an investigation or proceeding.

42 U.S.C. § 11133(a)(l)(B) (emphasis added).

47.     Although the law is clear that a hospital must file an NPDB report when a physician voluntarily surrenders the physician's clinical privileges while under "investigation" or to avoid an "investigation," this requirement did not apply in Dr. Doe's case.

48.     Since Dr. Doe commenced action to challenge the adverse NPDB report, Palmetto General Hospital has attempted to redefine Dr. Doe's routine medical quality assurance review by its Medical Care Peer Review Committee as an "investigation."

49.     Dr. Doe did not "voluntarily surrender" his clinical privileges while under investigation because he was not under "investigation" by Palmetto General Hospital's Medical Care Peer Review Committee.

50.     According to the NPDB Guidebook published by Defendant DHHS:

> A routine, formal peer review process under which a health care entity evaluates, against clearly defined measures, the privilege-specific competence of all practitioners is not considered an investigation for the purposes of reporting to the NPDB.   However, if a formal, targeted process is used when issues related to a specific practitioner's professional competence or conduct are identified, this is considered an investigation for the purposes of reporting to the NPDB. (Emphasis in original.)

51.     In Dr. Doe's case, the original medical quality assurance process that resulted in the Medical Care Peer Review Committee's recommendation for him to complete his medical records was not an investigation.

52.     As part of its routine formal peer review process, Palmetto General Hospital evaluated, against clearly defined measures, Dr. Doe and others' privilege-specific competence, namely timeliness and sufficiency of medical records.  According to the NPDB

Guidebook, this type of routine peer review does not constitute "investigation" for purposes of NPDB reporting.

53.    This is contrasted with a "formal, targeted process" used when "issues related to a specific practitioner's professional competence or conduct is identified."  That process is considered an "investigation for the purposes of reporting to the NPDB."  Dr. Doe was never under this type of formal targeted process.

54.    Even when a committee process is triggered, like the Medical Care Peer Review Committee, the reviews and analyses in any meetings or interactions with the physician which occur thereafter are still part of the peer review process.  They are not considered to be an investigation for NPDB purposes.

55.    The goal of the Medical Care Peer Review Committee in Dr. Doe's case was to provide collegial intervention and design a remedial action plan which provides education and support to Dr. Doe while not in any way limiting the exercise of his clinical privileges. This type of evaluating, monitoring, and proctoring are not reportable to the NPDB.

56.    Therefore, filing an adverse NPDB report against Dr. Doe as a result of a routine peer review process is inconsistent with NPDB reporting guidelines and is incorrect.

57.    Dr. Doe was undergoing a routine peer review evaluation by Palmetto General Hospital which resulted in a discussion for remedial action, not a formal investigation.

58.    Additionally, pursuant to 42 U.S.C. § 11112:

(a)  In General

For purposes of the protection set forth in section 11111(a) of this title, a professional review action <u>must</u> be taken--

        \*        \*        \*

(3) <u>after adequate notice and hearing procedures are afforded to the physician involved</u> or after such other procedures as are fair to the physician under the circumstances

        \*        \*        \*

(b)  Adequate Notice and hearing

A health care entity is deemed to have met the adequate notice and hearing requirement of subsection (a)(3) of this section with respect to a physician if the following conditions are met (or are waived voluntarily by the physician):

(1) Notice of proposed action

The physician has been given notice stating--

(A)(i) that a professional review action has been proposed to be taken against the physician,

(ii) reasons for the proposed action.

(B)(i) that the physician has the right to request a hearing on the proposed action,

(ii) any time limit (of not less than 30 days) within which to request such a hearing, and

(C) a summary of the rights in the hearing under paragraph (3).

(2) Notice of hearing

If a hearing is requested on a timely basis under paragraph (1)(B), the physician involved must be given notice stating--

(A) the place, time, and date, of the hearing, which shall not be less than 30 days after the date of the notice, and

(B) a list of the witnesses (if any) expected to testify at the hearing on behalf of the professional review body.

(3) Conduct of hearing and notice

If a hearing is requested on a timely basis under paragraph (1)(B)--

\*       \*       \*

(B) the right to the hearing may be forfeited if the physician fails, without good cause, to appear;

42 U.S.C. § 11112 (emphasis added).

59.     Dr. Doe was never afforded any notice, advised of any hearing procedures, or offered a hearing to defend himself before the adverse NPDB report was filed by PGH.  As such, PGH failed to provide Dr. Doe with the peer review described in the HCQIA.

### G.  Dr. Doe's Appeal of the NPDB Report

60.     Dr. Doe timely appealed the adverse NPDB report following the dispute procedures provided by the NPDB.

61.     Dr. Doe received a decision dated July 31, 2018, from Defendant DHHS, denying his appeal (review).  Exhibit "2."

62.     Exhibit "2" constitutes final agency action subject to review by this Court pursuant to 5 U.S.C. §§ 703 and 704.

### H.  Dr. Doe's Request for Correction of the NPDB Report Pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a

63.     On November 20, 2018, Dr. Doe requested that DHHS correct its records pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a, by removing Palmetto General Hospital's adverse NPDB report.

64.     According to the Privacy Act of 1974, 5 U.S.C. § 552a(d)(2)A, DHHS had ten (10) days to respond to the November 20, 2018, request or it would be deemed denied.

65.     On December 19, 2018, DHHS sent a letter to Dr. Doe's attorneys, informing them that DHHS had received the original Privacy Act correction request and was investigating the matter.

66.     On February 15, 2019, Dr. Doe requested review and appealed DHHS's failure to act on his Privacy Act correction requests to the Assistant Secretary for Health, Admiral Brett P. Giroir, M.D., for the final stage required of a Privacy Act appeal.

67.     On March 28, 2019, the Deputy Director of the Division of Practitioner Data Bank, Melissa Moore, wrote to Dr. Doe's attorneys to inform them that his Privacy Act correction requests were denied.  Exhibit "3."

68.     Exhibit "3" constitutes final agency action subject to review by this Court pursuant to 5 U.S.C. §§ 703 and 704 and 5 U.S.C.§ 552a, the Privacy Act of 1974.

69.     After exhausting all of the mandatory procedures pursuant to the Privacy Act, Dr. Doe now seeks review by this Court of the Agency's actions, which he contends are incorrect.

## CAUSES OF ACTION

## COUNT I (FORMERLY COUNT III)

## REVIEW OF FINAL AGENCY ACTION PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT

70.     This is a cause of action by Plaintiff against Defendant DHHS within the jurisdiction of this Court pursuant to 5 U.S.C. §§ 703 and 704, for review of final agency actions, Exhibits "2" and "3."  It requests review by this Court of the actions by the Secretary

of Health and Human Services, denying requests to remove an adverse report from the National Practitioner Data Bank.

71.     This Count is pleaded alternatively to and in addition to each other Count in this Amended Complaint.

72.     For the purpose of this Count, Paragraphs 1 through 69, above are incorporated herein by reference.

73.     **In summary, for this Count:**

a.     The Health Care Quality Improvement Act, 42 U.S.C. § 11101, et seq., (HCQIA) provides certain due process rights for health care providers that must be met by a reporting entity (in this case a hospital, PGH), before a valid report to the NPDB is authorized.

b.     DHHS issued written policies that have derogated from, negated, and are contrary to the HCQIA and are in violation of the Administrative Procedures Act, 5 U.S.C. § 701, et seq.

c.     DHHS did not initiate or conduct any rule making process in doing so. The policy guidance provided by DHHS to the general public is followed by hospitals and other individuals and entities as though they were the law.

d.     The Plaintiff challenges the policy of DHHS as one that is contrary to and exceeds the authority provided by statute and is, therefore, invalid, unauthorized, and ultra vires.

e.      The Plaintiff challenges the policy of DHHS as one that is contrary to and exceeds the authority provided by statute.

f.      The Plaintiff challenges the policy of DHHS as one that is capricious and arbitrary and is, therefore, invalid.

74.    Defendant DHHS's policies contained in the NPDB Guidebook are provided generally to the public for its use and specifically to reporting entities for use in making decisions regarding what is reportable to the NPDB.

75.    The policy challenged herein is Defendant DHHS's policy stated in the Guidebook, on its website, and elsewhere, which stated at all times relevant hereto, and continues to state:

> **Nonrenewals**
>
> Nonrenewals of medical staff appointment or clinical privileges generally should not be reported to the NPDB. However, if the practitioner does not apply for renewal of medical staff appointment or clinical privileges while under investigation by the health care entity for possible professional incompetence or improper professional conduct, or in return for not conducting such an investigation or not taking a professional review action, the event is considered a surrender while under investigation and must be reported to the NPDB. <u>These actions must be reported regardless of whether the practitioner was aware of the investigation at the time he or she failed to renew the staff appointment or clinical privileges. A practitioner's awareness that an investigation is</u>

<u>being conducted is not a requirement for filing a
report with the NPDB.</u>

(U.S. DHHS, Health Resources and Services Administration, NPDB Guidebook (Rockville,

Md., April 2015), p. E-33.)

76.    The foregoing policy in particular is contrary to the express wording of the

HCQIA, due process of law, and negates HCQIA's intent to afford the physician notice and

a hearing.  This policy is not a valid interpretation of the statute and is contrary to the express

wording of the statute.

77.    The HCQIA specifically requires that a reporting entity must provide or attempt

to provide a physician notice of his hearing rights, its procedures, and the right to a hearing.

78.    The HCQIA allows a physician to waive these rights;  however, as in the case

of any waiver of any significant right, the law requires that such a waiver be knowing and

intentional by the individual waiving the right.

79.    In the present case, the DHHS policy, as implemented by Palmetto General

Hospital, allows for an unknowing, unintentional waiver of a significant statutory right by the

physician.

80.    In the present case, the DHHS policy actually encourages reporting entities to

hide the fact that an investigation is pending from a physician who is the subject of such an

investigation, as Palmetto General Hospital apparently did in the present case.

81.    5 U. S. C. § 706 provides, in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall—
>
> (1)  compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2)  hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B)  contrary to constitutional right, power, privilege, or immunity;
>
> (C)  in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D)  without observance of the procedures required by law 5 U.S.C. § 553;
>
> *          *          *
>
> (F)  unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record . . . .

82.     Dr. Doe contends that the facts of this case show that Defendant DHHS's policy:

a.     Is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law;

b.     Contrary to constitutional right, power, privilege, or immunity of Dr. Doe and others in his situation;

c.     In excess of and contrary to statutory authority;

d.     Without observance of the procedures required by law, specifically 5 U.S.C. § 553;

e.     Unwarranted by the facts of this case to the extent that the facts, facts which are subject to trial de novo by the reviewing court.

Based on the policy of the Defendant, Dr. Doe has been significantly harmed, deprived of his rights, and he continues to be significantly harmed.

83.     The actions of Defendant DHHS are incorrect and are contrary to law.

84.     The actions of Defendant DHHS are capricious and arbitrary.

85.     Plaintiff has been and continues to be damaged by the actions of Defendant DHHS.

86.     Plaintiff has a significant and substantial interest in having such action prohibited and the adverse report removed.

87.     Plaintiff is not satisfied with the final agency decisions and believes they are wrong.

**WHEREFORE,** Plaintiff requests this Court review the actions taken by Defendant DHHS and reverse them, ordering the offending report removed, voided, or corrected.

## COUNT II

## <u>BREACH OF CONTRACT (MEDICAL STAFF BYLAWS)</u>

88.     This is a cause of action for breach of contract by Plaintiff against Defendant PGH, with damages in excess of $100,000,exclusive of interest, attorney's fees and costs, for breach of a written contract, within the jurisdiction of this Court.

89.     This Count is pleaded in addition to and alternatively to all other Counts pleaded in this Amended Complaint.

90.     For the purposes of this Count, Paragraphs 1 through 69 and 73 through 82, above, are incorporated herein by reference.

91.     Based on information and belief, Defendant PGH had a valid, binding contract with Plaintiff.   The contract also incorporated Defendant PGH's Medical Staff Bylaws ("Bylaws").

92.     Since Plaintiff is no longer a member of the PGH medical staff, he is not in possession of, nor does he have access to, PGH's Bylaws and related agreements that were in effect at the times relevant to these matters.   Defendant PGH, as an entity whose internal

operations and relationship are governed by the Bylaws and related agreements, is in possession of those documents and has full and complete knowledge of their contents and the rights and duties these documents impose on the parties.

93.     Under the contract and Bylaws, Defendant PGH agreed to provide Plaintiff with due process rights in the event adverse action was to be taken against Plaintiff's medical staff membership, or in the event Plaintiff acted or failed to act in a manner which warranted a report to the NPDB.

94.     In addition to the express terms and conditions stated in the contract, every contract also includes the implied warranties of good faith and fair dealing.

95.     Defendant PGH reported Dr. Doe to the NPDB for "Voluntary Surrender of Clinical Privilege(s), while under, or to avoid, investigation relating to professional competence or conduct."  (Exhibit 1, emphasis added.)

96.     However, the grounds that PGH used for filing the adverse NPDB report against Plaintiff violate provisions of the PGH Bylaws.

97.     PGH's Bylaws provided individual physicians like Plaintiff Dr. Doe certain rights and protections required by state and federal law.

98.     The Bylaws provided an individual physician such as Plaintiff Dr. Doe with the right to a fair hearing process when and if that physician were to face an "adverse action" while under or at the completion of an investigation.

99.     Whenever Defendant PGH determined that corrective action was warranted, the individual subject to such action is entitled to procedural due process rights.  Failure to provide those due process rights renders the peer review process a sham and constitutes a waiver of any immunities under Florida or federal law.

100.    At the time of his resignation, Plaintiff was not "under investigation," as that term is defined by the NPDB or any other reasonable definition thereof.

101.    Defendant PGH breached its contract with Plaintiff when it improperly reported him to the NPDB for facts and circumstances which it knew to be false and not subject to a report.  Furthermore, the NPDB stated in its guidance to hospitals such as PGH that the facts and circumstances for which Defendant PGH reported Dr. Doe were, in fact, not reportable.

102.    Plaintiff should not have been reported to the NPDB based on the plain language of the PGH Bylaws.

103.    Defendant PGH breached its contract with Plaintiff when it did not provide him with the appropriate due process rights, including notice and hearing, and all other rights set forth in its Bylaws.

104.    If Defendant PGH had given Dr. Doe any type of notice of a pending investigation, suspected actionable misconduct, or the possibility of adverse action, or offered him the opportunity for a hearing, as the Bylaws required, he would have requested a hearing, appeared to defend himself, and most likely been cleared completely as a result.

105.    Defendant PGH is not entitled to immunity under state or federal law because it did not provide Plaintiff with essential due process rights of notice and a fair hearing as described in HCQIA before reporting him to the NPDB.  Furthermore, Defendant PGH breached its contract with Dr. Doe, the Bylaws, by its actions.

106.    Further, Defendant PGH is not entitled to immunity because it maliciously and falsely reported Plaintiff to the NPDB for an action it knew or should have known was not reportable to the NPDB in the first place.

107.    Defendant PGH acted with intentional fraud and maliciousness in making the report to the NPDB, a copy of which is included as Exhibit "1" hereto.

108.    Defendant PGH had specific knowledge of the terms of the Bylaws, its reporting obligations to the NPDB, and its obligations to provide Plaintiff with notice and a hearing if he were truly under investigation.  Instead, Defendant PGH reported Plaintiff to the NPDB for allegedly resigning his privileges while under investigation, when it knew the corrective action plan on which it placed Plaintiff was a non-reportable, non-investigatory, collegial intervention.

109.    Defendant PGH is not entitled to immunity under Chapters 395 or 766, Florida Statutes, because it acted with fraudulent and malicious intent in the conduct of peer review proceedings, and it submitted a knowingly false NPDB report and perpetuated that conduct in responding to DHHS during the Secretarial Review process.

110.    Defendant PGH's actions directly damaged Plaintiff in several ways including loss of income and employment opportunities.  Plaintiff suffered lost professional fees and lost patients because of the continuing actions of Defendant PGH's submission and refusal to remove a knowingly false NPDB report.  Additionally, continued publication of the false report subjects Plaintiff to ongoing reputational damages through the derogatory statements regarding his performance and clinical skill because the report is widely available to others, including all prospective employers, hospitals, and insurance panels.

**WHEREFORE**, Plaintiff Dr. Doe requests this Court to enter judgment in his favor against Defendant PGH for:

A.    Actual damages in excess of $100,000;

B.    Pre-trial interest on all liquidated amounts;

C.    Post-trial interest on all amounts awarded at the judicial rate;

D.    Any other relief at law or equity the Court deems fair.

## COUNT III

## DECLARATORY JUDGMENT

111.    This is an action by Plaintiff  against Defendant PGH for a declaratory judgment, pursuant to 28 U.S.C.§§ 2201 & 2202 and Rule 57, Federal Rules of Civil Procedure, and within the jurisdiction of this Court.

112.    This Count is pleaded in the alternative and in addition to the other causes of action stated herein.

113.    Plaintiff incorporates for this Count the allegations contained in Paragraphs 1 through 69, 73 through 82, and 91 through 110, above, as if set forth fully herein.

114.    Plaintiff believes the contract he had with Defendant PGH, namely the Bylaws and related agreements incorporated therein, applies to and should be interpreted in such a manner as to require the Court to do one or more of the following:

    a.    Declare Plaintiff was not "under investigation" for purposes of reporting him to the NPDB;

    b.    Declare to the extent Plaintiff was "under investigation," such investigation ended prior to, or contemporaneously with, Defendant PGH requiring Cerner training and medical record review for timeliness, all of which were completed long prior to Plaintiff leaving the medical staff;

    c.    Declare Plaintiff did not resign his medical staff privileges while he was under investigation by the PGH Medical Staff;

    d.    Declare Defendant PGH did not have cause to submit an adverse NPDB report on Plaintiff; and

e.    Declare that under the HCQIA, its implementing regulations, and the NPDB Guidebook Defendant PGH should cause the NPDB report to be voided.

115.    A declaratory judgment is required to guide the parties in their current and future relationships.

116.    A bona fide, actual, present practical need for a declaration exists.

117.    The declaration requested concerns a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts.

118.    A privilege or right of Plaintiff is dependent upon the facts or the law applicable to the facts.

119.    Plaintiff and Defendant PGH have an actual, present, adverse, and antagonistic interest in the subject matter, either in law or in fact.

120.    The relief sought by Plaintiff is not merely giving of legal advice or the answer to questions propounded for curiosity.

**WHEREFORE**, Plaintiff requests a declaratory judgment setting forth his rights under Florida law and in accordance with the contract or contracts he had with Defendant PGH as they pertain to his rights as a member of the medical staff of PGH now and in the future.

**COUNT IV**

**INJUNCTIVE RELIEF**

121.     This is an action against Defendant PGH for injunctive relief, both temporary and permanent, pursuant to within the jurisdiction of the Court, pursuant to 5 U.S.C. § 706 and Rule 65, Federal Rules of Civil Procedure, pleaded in the alternative to or in addition to the other counts of this Amended Complaint.

122.     Plaintiff incorporates for this Count the allegations contained in Paragraphs 1 through 69, 73 through 82, and 91 through 110, above, as if set forth fully herein.

123.     As set forth in Count II, above, Defendant PGH is believed to have violated the Bylaws, a contract between Plaintiff and Defendant PGH under Florida law, by failing to give Plaintiff notice and an opportunity for hearing, and by submitting a false report to the NPDB stating, among other things, Plaintiff resigned his PGH medical staff membership while under investigation by the PGH medical staff.

124.     Defendant PGH refused to void or otherwise remove the report despite evidence that it should.

125.     By refusing to remove the false report, any potential employers, insurance companies, hospital medical staffs, boards of medicine, and other entities permitted to query the NPDB continue to see the false report and take action adverse to Plaintiff's personal and professional interests.

126.    To the extent that Defendant PGH may be entitled to immunity from monetary damages under Florida or federal law, Plaintiff is without a remedy at law, and an injunction is the only manner in which he can protect his future interests.

127.    Should the Court find Defendant PGH is not immune from money damages, any award would only compensate Plaintiff for past losses and will not provide an adequate remedy or prevent future losses if the false report continues to be published.

128.    If Defendant PGH is not required to remove or void the NPDB report, Plaintiff will suffer irreparable harm in the form of reputational damage, lost opportunities, and other as yet unquantified losses, not subject to a remedy at law.

129.    Enjoining Defendant PGH from continuing to publish or causing to be published a false NPDB report in the future is appropriate as no remedy at law can address the harm suffered by Plaintiff.  Alternatively, requiring Defendant PGH to file a corrected or "void " report, removing the false NPDB report is appropriate as no remedy at law can adequately address the harm being suffered by Plaintiff.

130.    Plaintiff has a substantial likelihood of success on the merits.

131.    The interests of the public and other third parties will be served by the entry of a permanent injunction.

132.    An injunction can be practically and adequately framed and enforced.

**WHEREFORE,** Plaintiff respectfully requests the Court enter an order enjoining Defendant PGH from continuing to publish the false NPDB report and requiring Defendant

PGH to correct or void the adverse NPDB report being maintained by Defendant DHHS and the NPDB.

## **REQUEST FOR JURY TRIAL**

133.    Plaintiff Dr. Doe requests a jury trial on all issues so triable.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff Dr. Doe requests judgment in his favor and against the Defendants as follows:

A.    Against Defendant DHHS/Azar finding that the final agency action in this case is unlawful or otherwise outside the scope fo the agency's authority and that the NPDB report against Plaintiff should be removed and the NPDB Guidebook and any other non-rule policy relied upon by Defendant DHHS/Azar be deemed to have been promulgated in violation of the Administrative Procedure Act;

B.    Against Defendant PGH, awarding:

(1)    Monetary damages, both past and future;

(2)    Special damages;

(3)    Pre-judgment interest on all liquidated amounts;

(4)    The declaratory judgment as requested in Count III, above;

(5)   Entry of temporary and permanent injunctions, as requested in Count

IV, above, requiring Defendant PGH to remove, correct or void the

adverse NPDB report; and

C.   Any other relief in law or equity as this Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have filed this document electronically with the Clerk of

Court via the CM/ECF System, which automatically serves all counsel of record appearing in

the case, on this 26th day of August 2020.  The additional party will be served with this

Amended Complaint by summons and service of process, and any other documents as may be

required by the Federal Rules of Civil Procedure.

/s  George F. Indest III
_____
**GEORGE F. INDEST III, J.D., M.P.A., LL.M.**
Florida Bar No.:  382426
Primary e-mail:  GIndest@TheHealthLawFirm.com
Secondary e-mail:  CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**CAROLE C. SCHRIEFER, R.N., J.D.**
Florida Bar No.:  835293
Primary e-mail:  CSchriefer@TheHealthLawFirm.com
Secondary e-mail:  CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**LANCE O. LEIDER, J.D., LL.M.**
Florida Bar No.:  96408

Page 33 of  34

Primary e-mail:  LLeider@TheHealthLawFirm.com
Secondary e-mail:  CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**ACHAL A. AGGARWAL, J.D., M.B.A.**
Florida Bar No.:  1008038
Primary e-mail:  AAggarwal@TheHealthLawFirm.com
Secondary e-mail:  CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL
ATTORNEY TO BE NOTICED
**THE HEALTH LAW FIRM, P.A.**
1101 Douglas Avenue
Altamonte Springs, Florida 32714
Telephone:  (407) 331-6620
Telefax:  (407) 331-3030
**ATTORNEYS FOR PLAINTIFF**

ATTACHMENTS:  Index and Exhibits

(Note:  Exhibits 1, 2 and 3, are filed under seal as S-20 (see Doc. 17) and are incorporated herein by reference.  Although it is believed by Plaintiff that Defendant PGH has copies of these, Plaintiff will also serve an additional copy of these on it separately.)

GFI/AAA/pa
S:\2300-2399\2335\002-A\410-Pleadings-Drafts & Finals\Complaint, Amended-FINAL.wpd